George M. McDonald

v.

Erasmus G. Minnick.

*Filed at Ottawa October 26, 1893.*

1. Deeds—*delivery—intention, essential.* The very essence of the delivery of a deed is the intention of the parties. If a party, under a contract for the exchange of lands, makes a manual delivery of his deed, with the understanding that he is to receive in exchange a warranty deed, and immediately upon discovering that he has not received such a deed demands the return of the deed made by him, there will be no delivery of his deed, within the meaning of the law.

2. Same—*enjoining the recording of undelivered deed and ordering its return.* Where the grantee in a deed obtains its possession without its legal delivery by the grantee, the latter may have a decree restraining the grantee from recording the same, and ordering its return to the maker.

3. Specific performance—*performance by the petitioner.* A general offer to perform a contract for the sale or exchange of land by the complainant in a bill for specific performance, is insufficient. He must allege and prove that, using due diligence before the filing of his bill, he has performed all that the contract requires him to do.

4. Where there is nothing in a contract for the exchange of land to justify the presumption that the parties contemplated an exchange of the property described, by mere quitclaim deeds or special warranties, and the proof fails to show that deeds of the latter kind were afterwards agreed on by the parties, the tender of a special warranty deed by one of the parties will not be sufficient to entitle him to a decree for the specific performance of the contract.

5. Same—*matter of sound legal discretion.* A court of equity will decree the specific performance of a contract only where, in the exercise of a sound legal discretion, it finds, from all the circumstances, the specific performance will subserve the ends of justice. It is never decreed as a matter of course, even when a legal contract is shown to exist.

6. Contract—*whether void—where no fraud is shown.* On bill to enjoin the recording of a deed made by the complainant for the exchange of lands, and to compel its return to the complainant on the ground that no delivery of the deed was made, the defendant filed a cross-bill to enforce the contract for the exchange. The court refused

specific performance of the contract and granted the relief sought in the original bill, and decreed the contract void and of no effect. No fraud was shown on the part of the defendant: *Held,* that the latter part of the decree setting aside the contract was erroneous. The refusal to specifically enforce a contract will not prevent the parties from enforcing any other remedy they may have under it.

Appeal from the Circuit Court of Cook county; the Hon. M. F. Tuley, Judge, presiding.

Mr. Elisha Whittlesey, Jr., for the appellant:

The delivery of a deed may be made by acts without words, or words without acts. The intention of the parties, to be gathered from attending circumstances, will control in determining what is a delivery. It may be by acts or words, or both. *Gunnell* v. *Cockerill,* 79 Ill. 79; *Benneson* v. *Aiken,* 102 id. 284; *Books* v. *People,* 15 Ill. App. 578.

Time is not always of the essence of a contract. *Smith* v. *Brown,* 5 Gilm. 314; *Seton* v. *Slade,* 7 Ves. 265; *Hepburn* v. *Auld,* 5 Cranch, 262; *Sater* v. *Gordon,* 2 Hill's Ch. 121; *Gibbs* v. *Champion,* 3 Ohio, 336; *King* v. *Hamilton,* 4 Pet. 311; *Waters* v. *Trovers,* 9 Johns. 350.

A contract may be enforced although subsequent events may have so materially changed its operation as to make it hard and oppressive on one of the parties. *Low* v. *Treadwell,* 12 Me. 441; *Addington* v. *McDonnell,* 63 N. C. 389.

An agreement to sell land is, in the absence of anything expressed to the contrary, an agreement to sell the whole of the vendor's interest therein. Waterman on Specific Per. sec. 150; *Bower* v. *Cooper,* 2 Hare, 408.

Where the agreement does not call for a deed with full covenants, the vendee is entitled only to a good and sufficient deed to convey the title in fee simple. *Thayer* v. *Tarrey,* 37 N. J. L. 339; *Parks* v. *Laroche,* 15 Ill. App. 354; *Lounsberry* v. *Locander,* 25 N. J. Eq. 554.

Messrs. Barker & Church, for the appellee:

When there is no clear manifestation of the intention of the grantor that the deed shall at once become operative to pass the title, and that the grantor shall lose all control of it, absolutely and unconditionally, there is no delivery. *Bovee* v. *Hinde*, 135 Ill. 148; *Byars* v. *Spencer*, 101 id. 429; *Cline* v. *Jones*, 111 id. 563; *Insurance Co.* v. *Campbell*, 95 id. 267; *Stokes* v. *Anderson*, 118 N. Y. 533; *Fisher* v. *Beckwith*, 30 Wis. 55.

Act and intention are the two elements or conditions essential to a delivery. It is the *intention* which gives vitality, force and effect to the act, whatever that may be. *Weber* v. *Christen*, 121 Ill. 97; *Bryan* v. *Wash*, 2 Gilm. 566.

The intent, of course, is to be gathered from the conduct of the parties, particularly the grantor, and all the surrounding circumstances. *Weber* v. *Christen*, *supra;* *Huey* v. *Huey*, 65 Mo. 695; *Chadwick* v. *Weber*, 3 Greenl. 141.

An essential characteristic and indispensable feature of every delivery is, that there must be a parting with the possession, and of the power and control over the deed, by the grantor, for the benefit of the grantee, at the time of delivery. *Prutsman* v. *Baker*, 30 Wis. 646; 2 Kent's Com. 439.

If a party throws a writing on a table and says nothing, and the other party takes it up, this does not amount to a delivery, unless it be found to be put there with the intent to be delivered. Com. Dig. Tait, A. 4; 4 Starkie on Evidence, 477; Coke on Lit. 36; *Mills* v. *Gore*, 20 Pick. 28.

When possession of a deed that has never been delivered has been surreptitiously or fraudulently obtained, it stands on the same footing with a forged deed. *Hadlock* v. *Hadlock*, 22 Ill. 388; *Hughes* v. *Easton*, 30 Am. Dec. 230.

When the contract stipulates for a deed with full covenants of warranty, it is not a performance or a valid tender to offer to deliver any other kind of a deed. *Murphy* v. *Lockwood*, 21 Ill. 618.

Acceptance is as essential as a delivery to render a deed operative. Appellee did not accept appellant's special warranty deed. *Moore* v. *Flynn,* 135 Ill. 79; *Wiggins* v. *Lusk,* 12 id. 135; *Tompkins* v. *Wheeler,* 16 Pet. 119; *Woodbury* v. *Fisher,* 20 Ind. 387; *Bank* v. *Webster,* 44 N. H. 268.

One seeking the performance of a contract to convey land must have performed his part of it; neglect or refusal so to do bars decree. *Weingaertner* v. *Pabst,* 115 Ill. 418.

The rule is, that a party claiming the benefit of the contract must prove himself ready, desirous, prompt and eager to perform fully his part of the contract at the commencement of the suit. If he manifests a disposition to repudiate the terms of the contract, a court of equity may, after such conduct, properly refuse its aid to enforce a specific performance. *Ditto* v. *Harding,* 73 Ill. 120; *Murphy* v. *Lockwood,* 21 id. 611; *Walters* v. *Walters,* 132 id. 478; Pomeroy on Specific Per. sec. 330.

Equity does not specifically enforce a contract as a right, but only in the exercise of a sound discretion, based on all the circumstances of the case. *Gas Light Co.* v. *Town of Lake,* 130 Ill. 60; *Woods* v. *Evans,* 113 id. 190; *Shaw* v. *Shoonover,* 130 id. 448.

Where the parties to a deed were both present at the time of its execution, and the grantor was bound by his previous contract to make the deed, yet the grantee, having taken it up and carried it away without the consent of the grantor, this was held to be no delivery of the deed. *Tharp* v. *Jarrell,* 66 Ind. 52; *Dearmond* v. *Dearmond,* 10 id. 191; *Jones* v. *Loveless,* 99 id. 317; *Woodman* v. *Coolbroth,* 7 Greenl. 181.

Mr. Justice Wilkin delivered the opinion of the Court:

This was a bill in chancery, filed in the circuit court of Cook county, by appellee, against appellant, to enjoin the recording of certain deeds, and compel the surrender of the

same, and to cancel an agreement for the exchange of real estate.   The bill sets up the following agreement:

"CHICAGO, *May 25, '89.*

"E. G. Minnick agrees to exchange lots 7, 9, 12 and 18, block 1, in a subdivision of lots 3 and 4, in L. C. Paine Freer's (receiver) Sub. of W. ½ of S. W. ¼ Sec. 32, T. 41, R. 14, Cook Co., Ill., subject to a mortgage on lot 7 of $1200 and accrued interest, on lot 12 of $1500 and accrued interest, and mortgage to B. L. on 25 shares of stock on lot 9, and 20 shares of stock on lot 18 above mentioned, and dues settled for May and prior months, and pay taxes of 1888 on above named property, to G. M. McDonald for W. ½ Sec. 30, T. 149, R. 67, Eddy Co., Dakota, subject to taxes of 1888, and a mortgage of $475 on lot 7 above mentioned, which mortgage is to run on or before two years, at seven per cent, and an accepted order from P. Duff & Sons, of Pittsburg, Pa., for 30,000 cigars, subject to bondage of 11½ to 13¼ dollars, deeds to be exchanged and trade completed within five days from this date.

E. G. MINNICK,

G. M. McDONALD."

It then alleges, in substance, that at a meeting of the parties on May 30, 1889, for the purpose of perfecting the exchange, the defendant wrongfully took possession of four deeds which complainant had executed preparatory to the performance of the agreement on his part, but which were not delivered, and has since refused to surrender them to complainant, but claims to hold them by right. The answer denied the allegations of the bill as to the non-delivery of the deeds, and averred that the defendant lawfully held the same. The defendant also filed a cross-bill, setting up the foregoing agreement, and praying that the same might be specifically enforced. The circuit court entered a decree according to the prayer of the original bill, and dismissed the cross-bill for want of equity.

The controversy between the parties grows out of a dispute as to what kind of deeds should be executed by each, in order to carry out the contract. The contention does not arise from different constructions placed on the agreement as to whether the word "deeds," as there used, means warranty deeds, but from conversations which took place after the agreement was executed, and at and before the meeting of May 30. They agree that on the 28th they had some talk as to whether they should make general or special warranty deeds. Complainant testifies that deeds of the latter kind were suggested by the defendant expressing a wish to have a larger consideration named in the deeds to him than the true valuation of the property. The defendant says such deeds were suggested by him as a means of dispensing with certain affidavits as to the condition of the title, which the parties had agreed to make. Complainant is positive that he then refused to make a warranty deed with any other than the true consideration, and that the defendant chose to accept deeds naming a larger consideration, with a special warranty; that he then refused to accept any other than a general warranty deed from the defendant. The defendant testified, with equal positiveness, that the understanding then was that each would accept a special warranty deed from the other. They met again on the 29th, each having prepared special warranty deeds, and again discussed the matter. Complainant says he again refused to accept such a deed, while the defendant swears that he looked his deed over and said it was all right.

Their final meeting was on the morning of the 30th. Complainant had then present the same four special warranty deeds he had on the 29th, being one for each of the lots mentioned in the contract to be transferred by him, and he says he had stated in each the consideration desired by the defendant. He had also prepared a general warranty deed for all the lots, stating the consideration in it at the actual valuation. According to his testimony he submitted to the defendant which he

would take,—the single deed, or the four,—and he decided to accept the latter; that these deeds having been completed as to the descriptions, were laid by him on a table in the office where the parties were; that the defendant took them up and put them in his pocket, at the same time laying on the table a deed from himself to complainant, which, upon examination, he discovered to be but a special warranty, and at once repudiated and threw back on the table, demanding the return of the four deeds taken by the defendant. On the contrary, the defendant testified that prior to his taking up the four deeds, he had laid on the complainant's table, in front of him, the same special warranty deed shown him the day before, and after handing him a mortgage, said, "Now, that completes my papers; these are mine, are they?" pointing to the four deeds in question, and he said "Yes," pushing them towards him; that he then took them and put them in his pocket; that the complainant "sat there a moment looking over the deed, and he laid it down on the table toward me, and said, 'Mack, let me have a warranty deed instead of this one; it does not make any difference to you, and it is probable that when I come to sell the farm it will be to some of those farmers up there, who might object to a special warranty deed showing the title.'" He then proceeds to detail the conversation, which ended in a quarrel, his arrest, etc. Two other parties were in the room during the time,—one a brother of the defendant, and the other a lady, Miss Miller. These parties were in conversation with each other most of the time, giving no special attention to what was said or done by the parties. Their testimony tends to corroborate the defendant's testimony as to the transaction, rather than that of the complainant.

We think, however, in view of the conceded fact that immediately upon complainant's examining the deed given him he objected to it, and at least requested a general warranty in its stead, the master was justified in reaching the conclusion, and the court in finding by its decree, that the minds of the

parties never came together in an agreement that complainant would accept a special warranty deed, and that there was no intention on his part to deliver the four deeds in question upon any other terms than that he should have a warranty deed. That being the reasonable conclusion from all the testimony, there was no legal delivery of the deeds to defendant. It was said by this court in *Bryan* v. *Wash*, 2 Gilm. 557, and many times since, speaking of the delivery of deeds: "The very essence of the delivery is the intention of the parties." It is too clear for argument, that even if complainant had made a manual delivery of the deeds, but with the understanding that he was to receive in turn a warranty deed, and immediately upon discovery that he had not received such deed demanded the return of those he had parted with, there would have been no delivery, within the meaning of the law. We are therefore satisfied with the decree of the circuit court in so far as it restrains the recording of those deeds and orders them returned to the complainant.

We are also of the opinion that on the case made by the cross-bill the decree dismissing it should be affirmed. Conceding that the contract is sufficiently certain in its terms to support a decree for specific performance, appellant failed to show such a performance on his part, or offer to perform, as would entitle him to that relief. It is too well understood to be seriously questioned, that a general offer to perform is not, in such a case, sufficient, but that the complainant must allege and prove that, using due diligence before filing his bill, he had performed all that the contract required him to do. There is nothing in the contract itself to justify the conclusion that the parties contemplated an exchange of the property described, by mere quitclaim deeds or special warranties, and, as we have seen, the proof fails to show that deeds of the latter kind were afterwards agreed upon by the parties. The complainant in the cross-bill neither alleged nor proved that he offered to convey by general warranty deed. Moreover, it

is the established rule that courts will decree the specific performance of contracts only when, in the exercise of a sound legal discretion, it finds, from all the circumstances, it subserves the ends of justice. It is never decreed as a matter of course, even when a legal contract is shown to exist. True, that relief can not be denied from mere whim or caprice, but, as in every other case when legal discretion is invoked, the action must be reasonable. We can not say, from all the facts and circumstances in proof in this case, that, taken in connection with the very loosely drawn contract between the parties, a court of equity ought to have specifically enforced its performance.

We are, however, unable to find sufficient authority, from all the evidence in this record, for that part of the decree declaring the contract of May 25, 1889, "to be void and of no effect," and perpetually enjoining McDonald from enforcing, or attempting to enforce, the same. It may be, as already said, that a court of equity will not specifically enforce the contract. Still, that would not prevent the parties from enforcing any remedy they might have under it. There is no pretense that the contract was fraudulently entered into upon the part of appellant. All that can be fairly said, from the evidence, as to his conduct in the attempted performance of it is, that he did not correctly understand the agreement as to the kind of deeds to be made, and mistook the law as to the sufficiency of the delivery of the deeds. We are unable to see, for that reason, that the contract should be decreed void, and he be enjoined from enforcing his rights, if any, under it. In that regard the decree of the court below is erroneous, and for that error it will be reversed, and the cause will be remanded, with directions to modify the decree so as to make it conform to the views here expressed.

*Decree reversed.*