CHARLES GRIFFIN

*v.*

GEORGE W. GRIFFIN.

*Filed at Ottawa November 9, 1896.*

1. VENDOR AND PURCHASER—*a vendee seeking to rescind for vendor's default must not be in default himself.* A vendee who seeks to rescind a contract of sale for the vendor's refusal to accept his note and mortgage when tendered as agreed, must, at the time of such tender, have performed or offered to perform all other undertakings embraced in his contract.

2. EQUITY—*when court of equity will enforce legal rights.* A court of equity having acquired jurisdiction to decree specific performance of a contract and to enforce a vendor's lien, will retain that jurisdiction to state the account between the parties and give relief by settling the whole matter.

3. COSTS—*when costs are properly assessed to complainant on bill for specific performance.* Where a vendor, seeking to enforce specific performance of a contract of sale, is in default for not having tendered the deed, it is proper to assess costs against him up to the time such default was made good.

Appeal from the Circuit Court of Marshall county; the Hon. T. M. Shaw, Judge, presiding.

In June, 1889, David F. Griffin died intestate, leaving as his only children and heirs-at-law three sons, George W., Charles and David F., and three daughters, Mary Hunt, Ann M. Dillman and Caroline M. Peterson. His estate consisted of real and personal property, and Charles was appointed administrator. All the heirs except Ann M. met in Wenona in October, 1889, and attempted to agree on a partition and division of the estate. The proposed division was as follows: It was agreed by and among all of said heirs that said David F. Griffin should have of said estate $10,000, and Mary Hunt $7200 from said estate, less $600 paid to her by the said George W. Griffin; that the said Ann M. Dillman should have of said estate the west half of the north-west quarter of section 4, township 30, north, range 1, east of the third principal meridian, and twenty-three acres of the north-west quarter of section 7, township 30, north, range 1, east, lying east of the west seventy-five acres of the north one hundred and forty acres of said north-west quarter of section 7, and also should have of said estate $1500; that the said Caroline Peterson should have of said estate the east half of the north-west quarter of section 4, township 30, north, range 1, east, and also twenty-three acres of land lying immediately east of the said twenty-three acres above to Mrs. Dillman, and should have $600 in money, to be paid to her from said estate; that the said George W. Griffin should have the north-west quarter of the south-east quarter of section 5, township 30, north, range 1, east, and forty-five acres lying east of the west thirty acres of the north one hundred and forty acres of the north-west quarter of section 7, township 30, north, range 1, east, and that said George W. should pay Mrs. Hunt $600, or so much of the $7200 as would make said heirs even; that any of said estate left after paying and dis-

tributing as above, and paying all claims against said estate and expenses of administration, should be distributed equally among the same heirs, and said Charles Griffin consented to waive any claim as an heir. Ann M. afterwards assented to the proposed division and partition. The appellee, George W. Griffin, did not assent to this agreement. He insisted the forty-acre tract was valued at too great a price when placed at $40 per acre.

Seeking to consummate the proposed partition and division of the estate, George W., Charles and David F. met, and several agreements and contracts were made to induce George W. to consent to the proposed division and partition. By one of those contracts David F., in consideration of George's assent to the division, promised that his interest in the amount to be divided under the last clause of the agreement should be paid by the administrator to Mrs. Mary Hunt to aid in liquidating the payment to be made her by George W., and Charles guaranteed that the shares of David F. and George W. in that residuary estate should be $400 each, and Charles was to pay Mrs. Hunt $600 for George W. out of those two shares, and was to buy the forty-five acres of land at $40 per acre and execute a note secured by mortgage, etc. This agreement in reference to the sale and purchase of the land was in writing. The other parts of the agreement were in parol.

Appellee filed his bill setting forth the division in accordance with the agreements, the execution of deeds, etc., the settlement of the estate, and tendering a deed for the forty-five acres to Charles, and asking for a decree for a vendor's lien for the amount of the purchase money, with interest, and for the payment of the sum guaranteed, etc. To this bill Charles filed his answer, substantially admitting the partition, distribution, agreement for sale and the several other contracts, and averring he had tendered a note and mortgage as provided in the written contract and that complainant refused to accept

the same. It was further claimed that complainant had
failed to comply with his contract, and had accepted his
distributive share of the estate not partitioned, amount-
ing to the sum of $254.04, and had thereby abandoned
the agreement for sale.

The evidence shows that to induce George W. Griffin,
who had never signed the agreement for the partition,
to comply with the proposed partition and division of
the estate made in June, 1889, David F. promised that
his residuary share should be by the administrator, the
appellee, paid to Mary Hunt, who was to receive from
George W. $600 as owelty in effecting the partition, and
Charles agreed to purchase the land at $40 per acre. By
the written agreement between George W. and Charles
as to the purchase and sale of the land, the oral agree-
ment as to the payment of the portion of the undistrib-
uted estate of David F. and the guaranty of Charles that
the distributive shares of George W. and David F. in the
undistributed estate should each be $400 together consti-
tuted the agreements and contracts under which the as-
sent of George W. to the partition and division was made.
In pursuance of these agreements and contracts deeds
were made by which the conveyance of the land was to
be effected. In the deed to George W. the acknowledg-
ment of three of the signers was omitted. Joseph Griffin,
a son of George W., filed a bill for a conveyance of the
lands which in that partition were conveyed to Caroline
Peterson, which finally resulted in a decree in favor of
the latter, and whilst that litigation was so pending
Charles tendered the deed to George W., together with
the notes and mortgage, which the latter declined to ac-
cept. Afterward distribution was made of the estate not
divided, and the share of each heir was $254.04, of which
George W. received and receipted for his portion, as did
the others except David F. Charles did not comply with
his contract to pay Mary Hunt the full $600 for George W.,

but it was after the commencement of this suit paid by the latter.

A decree was entered finding the amount due for the land, principal and interest, to be $2608.66, and decreeing a sale of the land, and for the further sum of $511.73, less the amount received by George W. on his distributive share of that not divided. From that decree this appeal is taken, and the errors assigned are, there is a remedy at law, the decree was not authorized by the evidence, and complainant was not entitled to relief because of *laches.*

BARNES & BARNES, for appellant:

Specific performance, in any case, is never a matter of right. It rests in the sound judicial discretion of the chancellor. *Morse* v. *Seibold,* 147 Ill. 318; *Marble Co.* v. *Wall,* 10 Wall. 357; *Nickerson* v. *Nickerson,* 122 U. S. 668.

If one party refuses to perform the other party may abandon the contract. *Bannister* v. *Reed,* 1 Gilm. 99.

The party going into equity for specific performance must aver and prove that he had always been willing and eager to perform; must do all in his power in the way of performance; must put his adversary in default; must plead facts, and prove them, which show that he has not been dilatory or in fault himself, but ready, willing and anxious; and must have done everything on his part to entitle him to the relief prayed for. *Hoyt* v. *Tuxbury,* 70 Ill. 331; *Phelps* v. *Railroad Co.* 63 id. 468; *Stowe* v. *Russell,* 36 id. 18; *Mix* v. *Balduc,* 78 id. 215; *Supervisors* v. *Henneberry,* 41 id. 179; *Kimball* v. *Tooke,* 70 id. 553; *Marshall* v. *Perry,* 90 id. 289 ; *McCabe* v. *Crosier,* 69 id. 501 ; *Taylor* v. *Merrill,* 55 id. 52; *Ditto* v. *Harding,* 73 id. 117; *Bishop* v. *Newton,* 20 id. 180; *Clement* v. *Evans,* 15 id. 94; *Anderson* v. *Frye,* 18 id. 95; Kerr on Fraud and Mistake, 358.

He who asks specific performance of his contract must show a performance or an offer on his part to perform.

*Boone* v. *Iron Co.* 17 How. 343; *Cohn* v. *Mitchell,* 115 Ill. 132; *Weingaertner* v. *Pabst,* id. 417.

The party seeking specific performance must aver and prove that he in apt time made and tendered a deed, and must produce the deed and put it in the dominion of the court to be delivered, if the court thinks proper.  *Melton* v. *Coffert,* 59 Ind. 310; *Sowle* v. *Holdridge,* 63 id. 213; *Goodwine* v. *Morey,* 111 id. 68; *Benton* v. *Shreeve,* 4 id. 66; *Overly* v. *Tipton,* 68 id. 410; *Mix* v. *Ellsworth,* 5 id. 517.

A party can never repudiate a contract and afterward have it specifically enforced.  *McClennan* v. *Darrah,* 50 Ill. 255.

FRED S. POTTER, for appellee:

When only a part of an agreement is reduced to writing, and the part so reduced to writing is merely a partial execution of the entire agreement, the whole may be proved.  *Bradshaw* v. *Combs,* 102 Ill. 428.

It is no objection to a suit for specific performance that the party prosecuting it stands in the relation of vendor.  Ordinarily a vendor, in the recovery of pecuniary damages, has an adequate remedy at law.  But he has his choice of remedies.  He may elect and resort to either a court of law or equity.  *Crary* v. *Smith,* 2 N. Y. App. 62; *Brown* v. *Haff,* 5 Paige's Ch. 240; *Pincke* v. *Curtis,* 4 Brown's Ch. 329.

The defendant being in possession, the defense of *laches* has no application.  *Bragg* v. *Olson,* 128 Ill. 544.

Ten years is the limitation on instruments in writing. Equity adopts the time in analogy to the rule of law that if ejectment is not barred a bill for specific performance is not barred.  *Bourland* v. *County of Peoria,* 16 Ill. 546.

Any agreement not prohibited by law may be renewed, and thenceforth it will be restored to its former vigor. Such renewal may be evidenced by an express agreement of the parties, or by acts which establish an intention to give it new force and effect.  When such breaches are

waived or the contract is renewed, it is then enforced precisely as if it had never ceased to be obligatory. *Graham* v. *Holloway*, 44 Ill. 392.

A party who prevents a thing being done at the time stipulated cannot avail himself of the non-performance he has occasioned. *People* v. *Holden*, 82 Ill. 101.

A court of chancery having acquired jurisdiction, although it has by decree disposed of all of the purely equitable matters in controversy, will yet retain jurisdiction, although it be to enforce purely legal rights between the parties. *Cook County* v. *Davis*, 143 Ill. 151; *Pool* v. *Docker*, 92 id. 509 ; *Peoria* v. *Johnson*, 56 id. 45 ; *Ransom* v. *Fox*, id. 200 ; *Stickney* v. *Goudy*, 132 id. 213.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Appellant did not comply with his agreement and pay Mary Hunt $600, but retained the share of David F. in that part of the estate not divided, neither paying it to the latter nor to George W. Griffin, the appellee. In this he was in default in failing to comply with his contract. The tendering the deed to appellee by appellant conveying this land in accordance with the agreement for the partition, and at the same time tendering a note secured by a mortgage, which was declined by appellee, did not constitute a full performance of the contract on the part of the appellant. He owed the duty of performing, or offering to perform, his contract fully before the vendor would be in default. The land which was the subject of the proposed conveyance was inclosed with other lands of the appellant, and he exercised certain acts of ownership over it by cutting brush, etc., and it does not appear the vendor exercised any control over the land after the execution of this contract. It does not appear that appellant ever offered to comply with his agreement by paying Mary Hunt $600 or any other sum on this contract. He had a sum amounting to $254.04 in his hands,

which he had guaranteed should be $400, to be used for that purpose. Whilst he was in default as to this part of his contract he could not rescind the agreement for a failure on the part of the appellee to comply with another part of the agreement. Whilst the agreement as to the purchase and sale of the land was in writing, and did not name the guaranty of the amount the shares should be, nor the agreement of David F., nor that out of these sums the appellant should pay Mrs. Hunt the sum of $600, yet the several contracts made one contract, as the full agreement for which George W. assented to the partition and division of the estate. Here were three distinct contracts, one of which was in writing. The other two constituted each separate, distinct contracts. It is not a case of a part of a contract existing in writing and a part by parol, but a case where three contracts constitute one consideration for another contract. Where a contract is reduced to writing it cannot be varied by parol. Nor can part of a single contract exist partly in writing and partly by parol, but there may be several contracts, some in writing and others in parol, which may altogether be the consideration of another separate and independent contract. *Bradshaw* v. *Combs*, 102 Ill. 428.

The default of appellant in failing to tender a sufficient deed from the heirs and failing to pay Mrs. Hunt the $600 prevented his right to declare a rescission of the contract as to the land. George W. had complied with his agreement in the execution of deeds to the heirs to effect the partition, and had parted with his interest in the land. The appellant would have no right to rescind his agreement until he had, as a condition precedent, strictly performed all he was to do. (*Wallace* v. *McLaughlin*, 57 Ill. 53; *Hunt* v. *Smith*, 139 id. 296.) The consideration for all the promises of the appellant was done and performed by appellee, who conveyed his interest in lands and consented to the paying to others of a large sum of money in which he believed he had an interest,

He was to be compensated by the compliance on the part of the appellant and David F. with their contracts. David F. authorized the payment of his distributive share, as guaranteed by appellant, to Mrs. Hunt for the benefit of appellee. David F. has never received that money, and it has been retained by appellant. The appellant owed the duty of complying with his several contracts, and a court of equity has jurisdiction to decree performance of those contracts and to enforce a vendor's lien, and, having jurisdiction for the purpose of decreeing a vendor's lien, will retain that jurisdiction for the purpose of determining and stating the account between the parties and giving relief by a settlement of the whole matter.

By the terms of the written agreement the note to be secured by mortgage was to be paid January 1, 1892, with interest at six per cent from January 1, 1890. The bill in this case was filed so early in 1893 that *laches* cannot be imputed.

It is insisted in the argument in behalf of appellant that appellee contested appellant's reports as administrator, and caused the expenditures of large sums of money for counsel fees, costs, etc., and that this should release appellant from these contracts. It nowhere appears in evidence that appellee waived any right to so contest the administrator's report, and exercising his right to so except thereto was a violation of no contract on his part.

Inasmuch as the deed was not tendered by appellant to appellee until after the filing of this bill, the chancellor properly awarded costs against appellant.

We find no error in the record and the decree is affirmed. *Decree affirmed.*