ANNA COUNCIL, Trustee, Plaintiff in Error, *vs.* JOSEPH BERNARD *et al.* Defendants in Error.

*Opinion filed December 16, 1925—Rehearing denied Feb. 5, 1926.*

1. USURY—*commission charged by broker does not make loan usurious.* Brokers negotiating a loan of another person's money may charge the borrower a commission without thereby making the loan at the full rate of legal interest usurious.

2. SAME—*when withholding commission for loan does not make it usurious.* It is not usury for the lender to withhold a commission for a loan, provided the total amount of interest charged, together with the commission, does not exceed the legal rate for the length of time for which the loan is made.

3. DEEDS—*burden is on complainant to prove deed absolute on its face was a mortgage.* The burden is upon the party alleging that an instrument purporting to be a deed is in fact a mortgage to prove the allegation by clear, satisfactory and convincing proof.

4. SAME—*what necessary to show deed was intended to be a mortgage.* To fix upon a deed absolute in form the character of a mortgage it must be shown to have been intended as a security in the nature of a mortgage, and a valid subsisting obligation must be shown, the performance of which the deed was intended to secure; and a mere option to re-pay the purchase money and receive a conveyance of the property will not convert an absolute conveyance into a mortgage.

5. FRAUD—*fraud is not presumed but must be proved by clear and convincing evidence.* Fraud, when alleged, will not be presumed but must be proved as a fact by such clear and convincing evidence as leaves the mind well satisfied the allegations are true.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. FRANK W. BURTON, Judge, presiding.

J. W. TEMPLEMAN, and T. W. HOOPES, for plaintiff in error.

T. W. QUINLAN, and BARBER & BARBER, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

On August 14, 1924, plaintiff in error, (who will hereafter be referred to as complainant,) individually and as trustee for her husband, William Council, filed her bill in the circuit court of Sangamon county seeking an accounting from defendants in error, Joseph Bernard and John R. Jones, (hereafter referred to as defendants,) and also to set aside a deed made by Council and his wife to Jones on August 23, 1923, conveying to him 421½ acres of land in Sangamon county. The bill alleges that a deed executed by Council and his wife conveying the real estate was made to Jones; that Jones paid nothing of value for the deed; that it was procured without consideration and by threats made by Bernard that he would foreclose the $50,000 mortgage he had on the premises if the Councils refused to make a deed to Jones; that Bernard knew that the mortgage was much larger than was owing; that the only money paid out by Bernard was $38,000, and that he had charged up to complainant usurious interest, commissions and personal services amounting to $84,000, and that all there was due to Bernard and Jones was the sum of $38,000 and interest. The prayer of the bill was that defendants be required to account for the money advanced to or for complainant; that the deed executed by complainant to Jones be set aside; that all the liens that defendants have be fully decreed by the court; and that Bernard be compelled to release said mortgage.

Each of the defendants filed a separate answer. The answer of Bernard admitted the execution of the deed by complainant to Jones but denied that such deed was secured by him or by reason of any threats made by him to complainant. The answer sets up that prior to July 21, 1920, William Council and attorney Michael Eckstein applied to Bernard to obtain a mortgage loan of $50,000 for Council for the purpose of paying off certain existing incumbrances as represented by mortgages, foreclosure certificates and judgment liens against the property, all of which exceeded the sum of $45,000; that Council agreed to pay Bernard a brokerage fee or commission of $2000 for obtaining the loan; that the loan of $50,000 was secured, represented by five different mortgages on the property. The answer sets up the disposition of the proceeds of the $50,000 loan, showing the several incumbrances, judgments, etc., paid, including an attorney's fee of $2000 to Eckstein, commission of $2000 to Bernard, and expenses of procuring and continuing abstracts, recording deeds, etc., of $561.77. The answer denies that Bernard made any usurious charge; alleges that the indebtedness represented by the mortgage was expended as set forth in the answer, and avers that neither complainant nor her husband has ever made any claim that Bernard owed money to them, or denied liability upon the mortgages and notes secured thereby, from the date of their execution, on July 21, 1920, to the time of the filing of the bill.

The answer of Jones admits the execution of the deed by Council and wife on August 23, 1923, conveying the real estate to him; that the deed was entered into in accordance with a written contract bearing the same date, which permitted the Councils to retain possession of the farm lands until March 1, 1925, to have the crops taken from the land during the years 1923 and 1924 and without payment of taxes, and granted to Mrs. Council an option to re-purchase the premises for the sum of $84,300 at any time prior to August 15, 1924. The answer denies that the deed was

procured by reason of any threats or fraud on the part of Bernard, and sets up that Jones has done and performed everything which was required of him to be performed under the contract of purchase and sale.

The cause was referred to the master in chancery to take the testimony and report his finding of facts and conclusions of law. The master reported, finding that on August 23, 1923, complainant conveyed to Jones the land in question, subject to certain mortgages, liens and taxes for 1923; that the deed was given for a good and valuable consideration paid and assumed by Jones and was not procured by fraud or duress on the part of either of defendants; that it was a valid conveyance and should not be held to be a mortgage. The master further found that on the same date complainant and Jones entered into a written agreement wherein Jones agreed complainant should, without payment of taxes, have possession of the premises until March 1, 1925, together with the crops grown thereon until that date. The further finding was that another written instrument bearing the same date was executed whereby Jones gave to complainant an option to re-purchase the premises on or before the 15th day of August, 1924, for $84,300; that complainant has not complied with the terms of the option contract and that the same should be canceled. The master further found that Jones was the legal and equitable owner of the premises and entitled to possession as of March 1, 1925; that Bernard loaned complainant $50,000 secured by a mortgage on the premises, and that the proceeds thereof were applied on behalf of and at the direction of William Council, and that Bernard has fully accounted to Council for the proceeds of the loan. The master recommended that the bill be dismissed for want of equity.

Objections were made to the report of the master, which were overruled and stood as exceptions before the chancellor. The chancellor overruled the exceptions and entered a decree substantially in conformance with the findings and

conclusions of the master. From that decree complainant has prosecuted a writ of error to this court.

By the assignment of errors the questions involved for our consideration are, first, whether the $50,000 mortgage loan negotiated by Bernard to the Councils was made for their benefit and without usury; and second, whether Jones made an absolute purchase of the property free from fraud and has carried out his purchase agreement.

From our examination of the proof presented, we find nothing whatever to show that Jones had anything to do with or even knew about the $50,000 mortgage loan made by Bernard to William Council at the time of that transaction, about July 21, 1920. Prior to that date Council owned the farm land here in question, upon which there were various mortgages, judgment liens and claims, amounting to over $45,000. Attorney Eckstein, who represented several judgment creditors, communicated with Council about the expiration of the period of redemption in a certain foreclosure proceeding affecting some of the property, and after Council had failed to raise the money to redeem, the latter requested the attorney to obtain a loan on the farm. After seeing several parties the attorney finally arranged for a $50,000 loan for a period of five years, at six per cent interest, with Bernard, and promised he would see that the lands were free from all liens if Bernard would negotiate the loan. The loan was arranged, and five cashier's checks were issued by the Commercial Trust and Savings Bank of Springfield, totaling $50,000, payable to Council, and these checks were endorsed by him. Bernard testified Council agreed to pay him $2000 commission and the expenses of securing the loan, and that such arrangement was made in the presence of Eckstein. The latter was a witness for complainant, and testified the checks were turned over to him; that he paid out the money for the Councils; that the Councils were in his office several times and went over the figures, and that nothing was paid to the Councils. The proof fur-

ther shows that at no time from the date of the negotiation of this loan until the filing of the bill in this case did Council or his wife question the amount of the loan or claim that they did not owe it. The evidence just mentioned was not refuted by the Councils.

The claim of counsel for complainant that the mortgage loan transaction was usurious is not supported by the record. The loan of $50,000 was for the term of five years at six per cent interest, and so far as the record shows it was agreed that the commission was to be paid by Council to Bernard, who at first refused to make the loan. If Bernard was making the loan for third persons, using the latter's money, and charged Council a commission for such services, the action on the part of Bernard as broker could not taint the loan with usury. Brokers negotiating a loan of another person's money may charge the borrower a commission without thereby making the loan at the full rate of legal interest usurious. (*Northern Trust Co.* v. *Sanford,* 308 Ill. 381; *Goodwin* v. *Bishop,* 145 id. 421.) If Bernard made the loan for himself as mortgagee, using his own money, still the transaction would not be usurious, as the interest at six per cent for the entire five-year term, together with the charged commission of $2000 spread over the same term, only amounts to a rate of interest of six and eight-tenths per cent, while the legal interest rate that may be charged is seven per cent. It is not usury to withhold a commission for a loan, provided the total amount of interest charged, together with the commission, does not exceed seven per cent for the length of time for which the loan was made. (*National Life Ins. Co.* v. *Donovan,* 238 Ill. 283.) Hence, under the undisputed proof in the record of an agreement to pay a commission, it would seem immaterial whether Bernard made the loan for himself or for some third person, which the evidence shows to be the fact. The distribution of the proceeds of the $50,000 loan is shown by the undisputed testimony of Eckstein to have

been made by him; that he served Council in securing the mortgage loan and went over the distribution figures with Council, who was in the attorney's office on several occasions. We think the proof warrants the conclusion that the Councils knew, or at least were told, how and for what purpose the proceeds of the loan were used. And this is made all the more certain by nothing being said or complained of by the Councils relative to such distribution from the date of the execution of the mortgage in July, 1920, till the filing of the bill in August, 1924,—a period of more than four years. We are of opinion the conclusion of the master and the decree of the court relative to the Bernard loan are correct.

The deed here involved which was made to Jones was dated August 23, 1923. Prior to this time approximately $10,000 in interest was owed by the Councils, as no interest except $500 had been paid on the $50,000 mortgage heretofore mentioned, though efforts had been made by Bernard to obtain the interest from the Councils, and the mortgage had been placed in attorney Quinlan's hands for foreclosure. Jones testified he is a farmer and banker and owned land adjoining the Council property; that he investigated the condition of the farm, as he had wanted to buy it for some time; that he went to Springfield to see Quinlan about it and told him he would like to buy it; that in ascertaining about the title to the property Quinlan told him it was in his hands for foreclosure. Jones also talked to Bernard in the latter's office about the property. On August 23 Jones called Bernard by telephone to go with him to the Council residence. Jones and Bernard went out on that date to see the Councils. After conversation between the parties lasting about an hour, a deed was executed by Council and wife and acknowledged by Bernard conveying the entire farm to Jones. Some three weeks later Jones had a contract and option prepared, which he took out to the Councils. The contract was executed by Council, his wife and Jones, and

the option was executed by Jones. Both instruments were dated back to August 23, 1923, which was the date of the execution of the deed by Council and wife to Jones. According to the testimony offered by Jones and Bernard and as shown by the provisions of the sale agreement, Jones agreed to purchase the farm for $70,000; the sum of $10,000 was to be paid in cash and applied upon the interest due on the mortgage to Bernard; the $50,000 mortgage was assumed; $1232.46 was to be paid for past due taxes for the year 1921; and the balance of $8767.54 was to be retained by Jones until the Councils should obtain the release of two judgments against the property,—one for $605.30, with interest from May 18, 1921, and the other for $5896.67, with interest from October 4, 1922. The property was to be freed and cleared of the judgment liens by August 15, 1924, otherwise Jones should retain the balance of the purchase price. The sale agreement further provided that the Councils should have possession of the property till March 1, 1925, together with all crops therefrom until that date. The option given by Jones to Mrs. Council provided, in substance, that she should have the right to re-purchase the land on or before August 15, 1924, for the sum of $84,300.

The proof in the record shows that Jones on August 23, 1923, when the deed was made by the Councils to him, gave a check for $10,000 to William Council, which was indorsed by him and turned over to Bernard for the purpose of paying off the interest which was in arrears on the $50,000 mortgage. The taxes due on the property, and subsequent taxes, were paid by Jones. Releases for the two judgment liens against the farm were never secured by the Councils, and the balance of the purchase price to be paid to the Councils by Jones was not paid by him. Mrs. Council, as trustee under a deed executed by her husband and herself on July 3, 1924, sought a re-conveyance of the property from Jones upon an offer to pay him $38,000, which he refused.

Jones, however, offered to convey to her the premises, free of all encumbrances and mortgage liens, upon her paying to him the sum of $84,300, as specified in the written option given to her. The option expired on August 15, 1924, and the bill was filed the day before the expiration date. Thereafter, the proof shows Jones interviewed the Councils and offered to extend the expiration date and terms in the option to November 1, 1924.

There was evidence offered that at the time of the purchase of the property by Jones the land was worth from $170 to $190 per acre, and its value at the time of the hearing was from $200 to $250 per acre.

Complainant testified about Jones and Bernard coming to her house during August, 1923, at which time no one but defendants, she and her husband were present, and her husband was not well at the time; that Jones wanted an option for the interest money due, and Bernard said he would foreclose the mortgage for the interest money next day if they did not give Jones the option; that defendants were in a hurry; that she and her husband supposed they were signing an option; that nothing was said about a deed, and they did not understand the paper to be a deed conveying the farm away; that the paper was an option till the year was up; that Jones was to pay off all indebtedness right away, before the year was up; that witness was to pay off the debt and Jones was to make her a deed; that she and her husband were to give Jones a contract showing they got this money from him; that on August 13, before the option expired, she told Jones she was ready to go through with the deal and pay him what was owing, but he wanted $84,300, and she refused to pay it, as she said she did not owe it. She further testified she knew if the money was not paid by August 15, 1924, that Jones would own the land.

William Council testified, in rebuttal, over the objections of counsel for defendants, to some of the same things stated by his wife; that the paper he signed was an option; that

he did not remember much about what did occur nor how many papers he signed; that he did not know he signed a deed, and if he did, defendants never read it to him.

The testimony of Bernard and Jones directly contradicted the statements made by complainant; they stated no threats whatever were made; that the deed made on the night of their visit to the Council farm was read to them; that Bernard said that the mortgage had been turned over to an attorney for collection, and that if Council would pay the $10,000 interest in arrears the foreclosure suit would be withdrawn, and that he had no interest in the trade except so far as the interest money might be paid on the mortgages belonging to persons for whom he was agent. Their testimony of the transaction and as to what transpired at the Council farm was in accordance with the provisions of the deed given by the Councils to Jones, the sale agreement executed by Council and his wife and Jones, and the option of re-purchase given by Jones to Mrs. Council.

The testimony of Jones disclosed, as we have before stated, that after his return from up North, which was about three weeks after the deed was made, he had prepared, in accordance with the original understanding of the parties, the two written instruments,—one referred to as the sale agreement and the other as the option,—which he took out to the Councils, where the sale agreement was then executed by them, and a copy of the option executed by Jones to Mrs. Council was left with her.

It is contended by counsel for complainant that the arrangement should be considered a taking of security for a loan by Jones to the Councils. The rule is that the burden is upon the party alleging an instrument purporting to be a deed is in fact a mortgage, and it must be established by clear, satisfactory and convincing proof. To fix upon a deed absolute in form the character of a mortgage it must be shown to have been intended as a security in the nature of a mortgage, and to hold such deed a mortgage, a valid,

319—26

subsisting obligation must be shown, the performance of which the deed was intended to secure. A mere option to re-pay the purchase money and receive a conveyance of the property will not convert an absolute conveyance into a mortgage. *Kelly* v. *Lehmann,* 297 Ill. 33.

The proof shows Jones paid the $10,000 interest due for over three years on the $50,000 Bernard mortgage, that he paid several hundred dollars for taxes in arrears, and that he assumed the payment of the original mortgage. Releases for the two judgment liens against the farm were not obtained by the Councils, and under the sale agreement Jones was not required to pay the balance of the purchase price to the Councils until the releases were arranged. Mrs. Council at no time attempted to comply with the provisions of the option and refused to tender the amount specified therein for the re-purchase of the farm. It was shown the time limit and terms of the option for re-purchase were offered to be extended to her by Jones for an additional period of two and one-half months. If Mrs. Council had tendered to Jones the price stipulated in the option of re-purchase and he had refused to re-convey to her the premises free and clear of all liens then she would have had just cause to complain. Fraud, when alleged, will not be presumed, but must be proved as a fact by such clear and convincing evidence as leaves the mind well satisfied that such allegations are true. *Wolf* v. *Lawrence,* 276 Ill. 11; *McKennan* v. *Mickelberry,* 242 id. 117.

We are of opinion that the proof in the record warrants the conclusion reached by the master and approved by the chancellor. The decree is therefore affirmed.

*Decree affirmed.*