JOHN KANE *et al.* Plaintiffs in Error, *vs.* WILLIAM HENRY HUDSON *et al.* Defendants in Error.

*Opinion filed April 20, 1916—Rehearing denied June 9, 1916.*

1. STATUTE OF FRAUDS—*when an oral contract will be enforced notwithstanding Statute of Frauds.* If an oral contract to convey land has been made and there has been such performance, in reliance on the contract, as will take it out of the Statute of Frauds, it will be enforced by a court of equity.

2. SAME—*proof of oral contract to convey must be clear and definite.* An oral contract to convey land must be clear and definite and must be clearly and satisfactorily proved, and it is indispensable that the acts done in performance of the contract shall be referable to the contract, alone, and have been done in performance of it.

3. SAME—*oral contract cannot be proved by declarations of one party not binding on the other.* It is not necessary that an oral contract to convey land shall be proved by the testimony of any witness who heard it made, and it may be proved by declarations of the parties not in the presence of each other, but it cannot be proved by declarations or acts of one party, only, not binding upon the other.

4. WILLS—*will is revoked by marriage of testator.* Under section 10 of the Statute of Descent the marriage of the testator revokes his former will, and if it is not re-published it has no force.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

LEO P. DAY, WENDELL P. KAY, and O. F. MORGAN, for plaintiffs in error.

J. W. KERN, and LOWELL D. KERN, (JOEL C. FITCH, of counsel, and C. G. HIRSCHI, guardian *ad litem,*) for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 16, 1914, an instrument purporting to be the last will and testament of John Hudson, deceased, was admitted to probate by the county court of Iroquois county.

By the terms of the will the personal estate of the testator was bequeathed to his son, William Henry Hudson, and all the real estate was devised to him for his natural life with remainder to the surviving children of his body, and in default of issue of his body living at his death, then to John Kane and Ella Murphy, grandchildren of the testator, who were the children of a deceased daughter. The son and two grandchildren were the only heirs-at-law of the testator. On June 5, 1914, the grandchildren, John Kane and Ella Murphy, filed their bill in the circuit court of Iroquois county to set aside the probate of the will, alleging that the testator, after the execution of the will, married Elizabeth Montgomery on May 24, 1887, whereby the will was revoked, and that it was never re-published. William Henry Hudson, in his own right and as executor of the will, his sons, Porter Hudson and William Hudson, and his daughter, Jessie Purgett, and Philip Purgett, her husband, with their two children, Ray Purgett and Bonnie Purgett, were made defendants. William Hudson, Ray Purgett and Bonnie Purgett were infants, and a guardian *ad litem* was appointed for them and filed a formal answer. The adult defendants answered, denying that the testator was lawfully married to Elizabeth Montgomery and averring that the marriage was void in law. Afterward the adult defendants filed an amended answer again denying the alleged marriage, and further alleging that John Hudson and William Henry Hudson made an oral contract about June 1, 1889, by which John Hudson, in consideration of support, maintenance and care for the remainder of his life, agreed to give William Henry Hudson all his property, both real and personal, and that William Henry Hudson took possession of and improved the real estate and performed the contract on his part and therefore was the equitable owner of the premises. If such a contract were proved the complainants would have no standing to question the probate of the will, because, even if the will were set aside, the property would

not go to them. (*Yott* v. *Yott,* 265 Ill. 364.) It therefore became necessary to amend the bill, for the reason that special replications in equity are not permitted, and a complainant must put in issue any fact in avoidance of a matter of defense set up by the defendant by proper charges in the bill of complaint. (*Tarleton* v. *Vietes,* 1 Gilm. 470; *White* v. *Morrison,* 11 Ill. 361.) Accordingly the complainants amended their bill by adding a denial that the alleged agreement was made and setting up the Statute of Frauds. The chancellor heard the evidence and entered a decree finding that after the execution of the will the testator married Elizabeth Montgomery, but complainants had no interest in the estate to be detrimentally affected by the will, because the contract alleged in the answer was made and had been performed by William Henry Hudson and he was the equitable owner of the premises. The bill was dismissed for want of equity, and the court allowed a fee of $300 to the guardian *ad litem,* to be taxed one-half against the complainants and the other half against the infant defendant William Hudson, and also allowed a fee of $2000 to the solicitor for the executor, to be taxed against the executor as costs and paid in due course of administration by the estate. The writ of error in this case was sued out to review the decree.

If an oral contract to convey land has been made and there has been such performance in reliance upon the contract as will take it out of the Statute of Frauds it will be enforced by a court of equity. Such a contract must be clear and definite and unequivocal in its terms and it must be clearly and satisfactorily proved. It is indispensable that the acts done in performance of the contract shall be referable to the contract, alone, and to have been done in performance of it. It is not necessary that the contract shall be proved by the testimony of any witness who heard it made, and it may be proved by declarations of the parties not in the presence of each other, together with evidence of

acts and conduct of the parties which shows that the agreement was made, but it cannot be proved by declarations or acts of only one party to the alleged contract not binding upon the other. *Geer* v. *Goudy,* 174 Ill. 514; *Seitman* v. *Seitman,* 204 id. 504; *Standard* v. *Standard,* 223 id. 255; *Watson* v. *Watson,* 225 id. 412; *Daly* v. *Kohn,* 234 id. 259; *Dalby* v. *Maxfield,* 244 id. 214; *Gladville* v. *McDole,* 247 id. 34; *Willis* v. *Zorger,* 258 id. 574; *Christensen* v. *Christensen,* 265 id. 170; *Lonergan* v. *Daily,* 266 id. 189.

It was proved at the hearing, and not disputed, that the testator married Elizabeth Montgomery after the execution of the will, and they lived together as husband and wife from May 24, 1887, until her death, in May, 1895. The will was never re-published, and by section 10 of the Statute of Descent it was revoked by the marriage.

John Hudson was ninety-nine years old when he died and he had been married five times. William Henry Hudson was born of one marriage, and Mary Ann Hudson Kane, the mother of the complainants, was the child of another marriage. Before the last marriage of John Hudson, in 1887, he and William Henry Hudson lived together on the farm of 400 acres owned by John Hudson. When John Hudson married Elizabeth Montgomery, in May, 1887, he left the farm and moved to Watseka and William Henry Hudson remained in possession of the farm. John Hudson lived in Watseka with his wife until her death, in 1895, after which he had a housekeeper or other persons living with him for a time and taking care of him. He also boarded for about three months with Della West, and at another time with J. C. Bunting. He then returned to the farm, where he lived with his son until about 1907, when they removed to Watseka. Since that time William Henry Hudson has rented the farm and collected the rents. There was never any change in the assessment of the property but the taxes were paid by William Henry Hudson and he paid his father's expenses. On January 31, 1890, after the time

273 — 23

it was alleged the contract was made, John Hudson and his
wife, Elizabeth, conveyed by warranty deed 200 acres of
the land to William Henry Hudson. William Henry Hud-
son had the income of the remaining 200 acres and put in
tile and made repairs, which amounted altogether to a small
fraction of the rental value of the farm during the twenty-
six years that he had possession of it.

No witness testified to having been present when the al-
leged oral contract was made nor when it was mentioned by
the parties, or either of them, in the presence of the other.
The only witness who heard John Hudson make any dec-
laration which conformed to the alleged agreement, said
that he heard his father say on July 4, 1889, to Hudson,
that he had acted the fool and had given his son everything
he had, to which Hudson replied that he had given William
everything he had for taking care of him the rest of his
life; that he did not want to be bothered with his property
any more and wanted to get rid of it and gave it to Wil-
liam to take care of him. The same witness said that in
four different subsequent years the witness said to John
Hudson that his son was keeping his promise, and Hudson
at one time said that William was a good boy and was tak-
ing good care of him and doing all that could be done, and
said that William had tiled out the old sloughs and im-
proved the farm. The defendants examined several other
witnesses as to the declarations of John Hudson, but they
did not correspond with the contract alleged nor tend to
prove it, but rather the contrary. One of them said that
John Hudson made the remark that he expected to leave
the property to Bill; another, that he said he had some
property and after he was through with it he wanted the
boy to have it; that he said nothing about having made any
disposition of it but stated what he wanted done with it
when he was gone; another, that he said he intended to
keep enough property in his hands to keep him as long as
he lived and when he was done with it he intended William

to have whatever was left, and another testified that he said he had left everything to his son, William. About 1895 or 1897, which was several years after the conveyance of the 200 acres, John Hudson went to the bank where his will was deposited and asked the banker to read it to him. When it was read he said that was the way he thought it was and the way he wanted it; that he had thought he would give William the other 200 acres by a deed but the will gave him the use of it during his lifetime, and that would do him just as much good as a deed and then it would go to his children. He told him to put up the will, as that was the way he wanted it. At another time he said to the banker that when he was gone he wanted William to have his property. There was no change in the possession of the farm, except in the fact that John Hudson left after his last marriage and from that time the son had the entire control, and there was no evidence that William Henry Hudson ever alluded to any contract or claim of possession or any right by virtue of a contract. On April 21, 1914, he filed in the county court his petition, verified by his oath, for the probate of the will and for letters testamentary, in which he stated that John Hudson died seized and possessed of real estate valued at about $28,000. Evidently he did not then understand that he had entered into any contract by which he had become the owner in fee of the farm or he would not have been content to accept the life estate under the will. It does not appear from the evidence that he learned of the supposed contract until he amended his answer. The evidence was that John Hudson in his last years was a very great care and that his son and wife were very kind to him and gave him excellent care and attention, for which they deserve much credit, but, of course, that fact did not tend to establish any contract.

Considering all the evidence, the making of the alleged contract was not only not proved with the clearness required by the law, but, giving full credit to everything testified to

for the purpose of establishing the contract, the probabilities were against the existence of it. The will was revoked by the marriage, and the alleged contract not being proved, the property descended to the heirs-at-law.

The decree is reversed and the cause remanded.

*Reversed and remanded.*