(No. 11903.—Reversed and remanded.)

JOHN KANE *et al.* Appellants, *vs.* WILLIAM HENRY HUDSON *et al.* Appellees.

*Opinion filed February 20, 1918.*

1. SPECIFIC PERFORMANCE—*when alleged oral contract to convey is not sufficiently established.* Where the evidence of an alleged oral contract by which a father agreed to give his son all his real property at his death if the son would support him is contradicted by provisions of the father's will giving the son only a life estate in the property and by evidence of conveyances of part of the property by the father, alone, after the alleged contract, said contract is not sufficiently established to be specifically enforced.

2. APPEALS AND ERRORS—*when cause will not be remanded for further hearing.* On a second appeal in the same case, after additional evidence has been heard on the second hearing to establish an oral agreement to convey, the cause will not be remanded for further hearing if the decree is reversed on the evidence, as the Supreme Court must assume that all the evidence which can be obtained to prove the existence of the alleged oral agreement has been introduced.

APPEAL from the Circuit Court of Iroquois county; the Hon. DORRANCE DIBELL, Judge, presiding.

LEO P. DAY, WENDELL P. KAY, and O. F. MORGAN, for appellants.

JOEL C. FITCH, and LOWELL D. KERN, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This was an action brought in the circuit court of Iroquois county by appellants to set aside the will of John Hudson, deceased, and to have his estate distributed among his heirs according to the laws of descent in Illinois. The case has been before this court previously. (273 Ill. 350.) The first decree entered in the trial court having been reversed and the cause remanded by that opinion, the pleadings up to that time were set forth in the former opinion and need

not be re-stated. After the reversal the case was re-dockcted in the circuit court, and counsel for appellants contending that the merits of the case were settled by the former decision of this court, moved that a decree be entered by the trial court as to the merits of the case under that decision of this court. This motion was overruled. After the case was re-instated in the trial court the adult defendants by leave of court filed their joint and several amended answers to the amended bill, in which they concede that John Hudson was lawfully married to Elizabeth Montgomery after he made his will, and further set up an alleged contract in substance the same as set up in their former answers and considered by this court in said previous opinion. Thereafter a stipulation was entered into in said cause in the trial court by the adult defendants and the solicitors for the infant defendants and counsel for complainants, that the evidence taken upon the former hearing in said court and preserved in the certificate of evidence on file should stand as the evidence in the cause upon the second hearing thereof, and in addition to such evidence contained in said certificate of evidence either party might offer such additional evidence as they might see fit, subject to the rules of evidence and the procedure of courts of chancery. The original certificate of evidence was thereupon introduced and is before us in this case, with certain additional testimony introduced by both parties.

The essential features of the evidence heard on the first trial are set forth in the former opinion. The only additional testimony having a material bearing on the question as to whether such oral contract was made between deceased and his son, William Henry Hudson, was given by James W. Kern, the attorney for the adult defendants in the former hearing before the trial court. In this hearing he withdrew as solicitor from the trial of the case of record just before he gave his testimony, or, to be strictly accurate, while he was giving his testimony on the second hearing.

The substance of his testimony was, that about two years before the death of John Hudson he lived a near neighbor to him; that Hudson was overcome by the heat and thought that he might not live long and sent for him, and that while there, in the presence of the son, William Henry, told him that he had made an agreement with William Henry to give him all his property at his death, with the understanding that said son was to take care of him during his lifetime in consideration of this gift; that he also said that he had made a will years before, and he wanted Kern to promise that he would see that the will was upheld and its provisions carried out. We shall have occasion to refer to this testimony of Kern later in this opinion.

A strenuous argument is made by counsel for appellants that this case was decided on its merits by this court on the former hearing, and that on the remanding of the case the trial court should have entered a decree without re-trial, citing many authorities in support of this argument. Counsel for appellees argue just as earnestly and exhaustively that under the decisions of this court, in view of what was said in the opinion and the remanding order, the trial court rightly heard additional evidence, and rightly considered that under the reversal of this court the case was open for a re-trial on the merits. In view of the conclusion we have reached as to the merits of the case, on the record before us as made in the trial court, we do not deem it necessary to consider or decide that question.

Counsel for appellees concede that the marriage of John Hudson on May 24, 1887, annulled the will theretofore executed by him, but insist that the evidence shows that Hudson had by an oral contract given all his property to his son, William Henry Hudson, before his death, and that therefore appellants are without any interest in the property under said will or under the laws of descent of this State, and therefore their bill to set aside the will and partition the property was rightly dismissed for want of equity. The sole

question before us for consideration at this time is whether such an oral contract, if so made by the father with the son, William Henry, to give him the property at the time of his death, can be enforced in equity. This court said in its former decision (p. 352): "Such a contract must be clear and definite and unequivocal in its terms and it must be clearly and satisfactorily proved. It is indispensable that the acts done in performance of the contract shall be referable to the contract, alone, and to have been done in performance of it. It is not necessary that the contract shall be proved by the testimony of any witness who heard it made, and it may be proved by declarations of the parties not in the presence of each other, together with evidence of acts and conduct of the parties which shows that the agreement was made, but it cannot be proved by declarations or acts of only one party to the alleged contract not binding upon the other,"—citing many authorities from this court upholding that doctrine.

The evidence on the former hearing showed that John Hudson owned a farm of over 400 acres in Iroquois county; that William Henry Hudson lived with him on said farm for some years before the father moved to Watseka, in said county; that before the father so left, the son had had, in a large measure, the charge of the farm and had carried it on; that the father moved to Watseka in 1887, and the proof tends to show that in June, 1889, the alleged oral contract between John Hudson and his son, William Henry, was made as to the father giving the son all of his property on condition that the son should take care of the father during his lifetime. The evidence also tends to show that before and after the father moved to Watseka there was not much change so far as the control and management of the property by said son were concerned. It does not appear that the son had ever paid rent while he was on the farm, but the evidence tends to show that some years before his father's death he had leased 400 acres of said land to

others and collected the rents from them. There is also evidence tending to show that the father, for some years before and after he left the farm, had kept no bank account and had checked on the bank account of his son and that such checks had been honored by the son and paid without question, but these checks were not large in amount and would not come anywhere near equaling a reasonable rent of the farm while the son was managing it. We do not think there is any evidence in the record that tends clearly to show that after the alleged agreement of June, 1889, the son had any different management or control over the farm than he had had for some years previous. At the time of said alleged agreement John Hudson owned 480 acres of land in said county and a number of town lots in Watseka. About seven months after June, 1889, he conveyed 200 acres of said land to William Henry Hudson for a consideration, as stated in the deed, of $5000. Some years thereafter he sold and conveyed to John Kane, one of the appellants herein, 80 acres of said land for the consideration of $2500 and took a mortgage for part of said purchase money from Kane. Fourteen years after said alleged agreement he sold some town property and deeded it to D. G. Perry for a consideration of $1000, and the evidence all tends to show that he carried on these transactions as to the conveyance of these three pieces of property as if the land all belonged to him and no one else had any legal interest in it. In April, 1914, after his father's death, appellee William Henry Hudson filed in the county court his sworn petition for the probate of the will and for letters testamentary on his father's estate, in which he stated that his father died seized and possessed of real estate valued at about $28,000. The court said in its former opinion with reference to this matter (p. 355) : "Evidently he did not then understand that he had entered into any contract by which he had become the owner in fee of the farm or he would not have been content to accept the life estate under the will. It does not appear

from the evidence that he learned of the supposed contract until he amended his answer." There is no evidence taken on this hearing that in our judgment lessens the force of this statement, on the facts in this record, as to William Henry Hudson not claiming, at the time he filed the petition in the probate court after his father's death, that he (the son) owned the land under the alleged oral agreement. This court also said with reference to the alleged oral contract, in the former opinion (p. 355): "Considering all the evidence, the making of the alleged contract was not only not proved with the clearness required by the law, but, giving full credit to everything testified to for the purpose of establishing the contract, the probabilities were against the existence of it." Unless the evidence of James W. Kern, heretofore referred to, taken on the second hearing, is of such a character as to change this conclusion of this court as expressed in the opinion, the conclusion reached in that opinion as to there being no contract between the father and son must control here.

This makes it necessary, in fairness to all the parties, to set out at some length the testimony of attorney Kern. In substance he testified that he was acquainted with the deceased, John Hudson; that in the fall of 1912, the second summer before he died, at noon one day witness was called over to William Hudson's place, where John Hudson lived, and learned that John had been overcome with the heat; that he went into the bed-room where Hudson was lying and found that he was not paying any particular attention to anything at the time; that witness felt of Hudson's pulse and it was scarcely perceptible; that Hudson was lying on his back and witness could scarcely hear him breathe; that witness stood there a few minutes and then said that he was going home to get dinner, and then Hudson put out his hand to stop him and said he wanted the witness to come back after dinner as he had something to say to him; that witness went back after dinner and found him alone in the bed-

room, sat down close by the bed, and Hudson said: "I have made my will many years ago; Judge Bovie wrote it in his lifetime; I am not long for this world and I am ready to go, but I want you to promise me, before I go, that you will see that that will stands;" that witness replied, "Well, Uncle John, I suppose your will is all right; I never saw the will and don't know anything about its execution; it was executed many years ago; nobody could claim that you were not competent to make a will; I have no doubt that the will is all right;" that Hudson further said, "I want you to promise me that that will shall stand;" that witness made some reply, and then the third time Hudson said, "I want you to promise me," and that finally the witness, to put him at his ease, said, "Well, Uncle John, I will do that; I will do as you wish;" that the son, William Henry Hudson, came in and stood at the foot of the bed during part of this talk; that the father, John Hudson, then said: "Tid [referring to his son's wife] has done a great deal for me and I have been a great care and I would like to give her 40 acres of land, but I can't give it to her because I made an agreement with William many years ago that if he would take care of me during my lifetime he should have all of my property at my death, and Will has kept his word."

In order to understand this testimony of Kern it is necessary to set out the provisions of the will with reference to the attempted disposition of the property by said document. After providing for the payment of his just debts the testator gave all the personal property to William Henry Hudson. The third clause of the will reads: "I will and bequeath to my said son, William Henry Hudson, all my real estate for and during the term of his natural life, and after his death I will and bequeath said real estate to be equally divided between the surviving children of his body, share and share alike, in fee simple, and in case of the death of any one of his children now living or hereafter born who shall die without issue, the share of such one shall be

equally divided between those living and to no other person or persons, and in the event of my son William Henry Hudson's death without leaving any issue of his body, then all my real estate I hereby will and bequeath to my grandchildren, Ella Kane (now Murphy) and John Kane, and their heirs forever, share and share alike," etc.

In addition to the testimony of Kern with reference to testator wanting the provisions of the will carried out, we have the testimony of the witness Williams substantially as set out in the former opinion of this court and now before us in the certificate of evidence of the former trial. Surely the witness Kern, if he understood the nature of the provisions of said will at the time he was talking to John Hudson, would have readily comprehended that the alleged oral agreement could not be carried out if the provisions of the will were to be sustained. This testimony of Kern, it seems to us, is contradictory and in a measure self-destructive. Instead of making definite and clear what the wishes of Hudson were as to the disposition of his property, in our judgment it tends to further becloud the issue. We have no doubt, from this record, that Hudson was very friendly to his son, William Henry, and wished to compensate him for the care given to the father in his old age. There is no evidence in the record that the son had failed to take proper care of his father while he was alive, the same as any dutiful son would have done under similar circumstances, but the will upon which the father was relying as to setting out his wishes in the matter shows clearly that he did not intend to give all of his property to his son but only a life estate in the land not already conveyed to him. The conveyances of several pieces of real estate owned by the father at the time of the alleged oral agreement and conveyed by him thereafter show clearly that at the time of these several conveyances he did not understand that the property had been given to his son. On the record before us we can see no reason to change the conclusion reached

when the case was here on a former appeal, that the evidence fails to establish the alleged oral contract, and that the probabilities, on the evidence in this record, are against its existence.

As we must assume from the vigorous contests made on both these hearings that all the evidence which could be obtained to prove the existence of the alleged oral agreement has been introduced, we deem it advisable not to remand this cause for further hearing.

The decree of the circuit court will therefore be reversed, with directions to that court to enter a decree in accordance with the two opinions of this court and the prayer of the amended bill of complaint.

*Reversed and remanded, with directions.*