## CYRUS C. CONANT, impl., etc.

*v.*

## ESTHER RISEBOROUGH, Conservator.

*Filed at Ottawa October 31, 1891.*

1. TRUST—*when it arises*—*in case of an agency.* A and his wife were the owners of eighty acres of land, each holding the title to forty acres thereof, upon which they had executed a deed of trust to secure their notes for $1700. On their separation, B, a brother-in-law, purchased the notes and deed of trust, and, professing to act as the friend and agent of the wife, procured a conveyance of the land of A and his wife, and surrendered to A his notes and deed of trust, which latter, however, was not released. The land was of greater value than the amount of the notes: *Held*, that B, on being paid the sum due him, would hold the title in trust for the benefit of A's wife, and could not profit by his purchase from A and his wife.

2. Where a person is intrusted, as a confidential agent, with the conduct of business, where he professes not to act for himself but for others who have placed their confidence in him, he is disabled in equity, even though he may be a volunteer, from dealing in the matter of his agency on his own account. The agency being established, he will be compelled to transfer the benefit of his contract.

3. A husband and wife gave a deed of trust on their several interests in a tract of land, to secure their joint debt, which was much less than the value of the land. A difficulty having arisen between them, resulting in a separation, a brother-in-law purchased the mortgage debt with his own means, and professing to be acting as the agent and adviser of the wife, and in her interest, procured her and her husband to convey the land to him, stating that he did not want to make or lose anything in the transaction, the husband joining in the deed in the interest of his wife. On the delivery of the deed the grantee surrendered the notes to the husband, and afterward denied his trust, and claimed the deed to him was an absolute sale : *Held*, that the grantee held the land in security for the amount due on the notes and mortgage to the date of their surrender, and as to the value of the property above the mortgage debt, he held the same in trust for the wife, and he was required to account for the rents and profits after taking possession : *Held, also,* that after the surrender and destruction of the notes the grantee was not entitled to charge any greater interest than six per cent.

4. One who professes to act as agent for another, and yet purchases or takes title in his own name and for himself, will be held to be a

trustee, if the party for whom he pretends to buy or take the title has an interest in the property.

5.  This rule applies not only to persons standing in a direct fiduciary relation toward others, but also to those who occupy any position out of which a similar duty ought, in equity and good morals, to arise. No party can be permitted to purchase an interest when he has a duty to perform in respect of such interest which is inconsistent with the character of a purchaser.

6.  REDEMPTION—*right proven by parol evidence.* The right to redeem land conveyed by an absolute deed can not be established by simply proving that such was the understanding on which the deed was executed; but parol evidence may be received to show the existence of a debt on account of which the conveyance was made, and such a fact will, in a court of equity, control the operation of the deed.

7.  Such parol evidence is admissible so far as it conduces to show the relations between the parties, or to show any other fact or circumstance of a nature to control the deed, and to establish such an equity as will give a right of redemption.

8.  MORTGAGEE—*right to purchase equity of redemption.* While a mortgagee has the right to buy of the mortgagor the equity of redemption, yet a court of equity will look closely into such a transaction, to prevent the debtor from being overreached.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Ogle county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. MARSHALL & TAGGART, for the plaintiff in error:

So far as it may be claimed that there was a parol trust in the land conveyed to Conant January 15, 18'.9, such trust is void under the statute. *Perry* v. *McHenry,* 13 Ill. 233; *Lantry* v. *Lantry,* 51 id. 465; *Rogers* v. *Simmons,* 55 id. 78; *Walter* v. *Klock,* id. 362; *Adams* v. *Adams,* 79 id. 517; *Stephenson* v. *Crapnell,* 114 id. 19.

A party can not claim a trust against his own absolute deed. *Lawson* v. *Lawson,* 117 Ill. 98.

To show that a deed absolute in form is a mortgage, mere parol statements are not enough. 1 Hilliard on Mortgages, p. 53, chap. 3, sec. 4; *Sutphen* v. *Cushman,* 35 Ill. 193; *Knowles*

CONANT *v.* RISEBOROUGH.     385

Brief for the Defendant in Error.    Opinion of the Court.

v. *Knowles,* 86 id. 3 ; Jones on Mortgages, sec. 335 ; Perry on Trusts, secs. 137-139 ; *Hancock* v. *Harper,* 86 Ill. 447.

After the surrender of the notes there was nothing for the mortgage to operate upon. *Rue* v. *Dole,* 107 Ill. 275.

Messrs. WILLIAM & E. P. LATHROP, for the defendant in error :

Conant having acted as the agent of Mrs. Nashold in procuring the deed to himself, can not be allowed to make a profit out of the transaction. Story on Agency, secs. 210, 211 ; Story's Eq. Jur. secs. 315, 316 ; *Sweet* v. *Jacock,* 6 Paige, 355 ; *Casey* v. *Casey,* 14 Ill. 112 ; *Dennis* v. *McCagg,* 32 id. 429 ; *Reigard* v. *McNeil,* 38 id. 401 ; *Moore* v. *Pickett,* 62 id. 160 ; Perry on Trusts, sec. 206.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court :

This is a bill filed on the 25th day of June, 1885, in the Circuit Court of Ogle County by the defendant in error, Esther Riseborough, as conservator of Sarah E. Nashold, an insane person, against the plaintiff in error Cyrus C. Conant, and also against Menzo Nashold and Elizabeth Baker, for the purpose of having a deed, executed by said Menzo Nashold and his wife, said Sarah E. Nashold, to said Conant, declared to be a mortgage security, and for redemption of the property, and for conveyance thereof to the complainant as such conservator upon payment of the mortgage debt, and for an accounting as to the rents and profits, and amounts due, etc. The decree of the Circuit Court was in accordance with the prayer of the bill, and the case is brought here by writ of error.

The premises in controversy consist of 80 acres of land, of which, at the date of the trust deed hereinafter named, Menzo Nashold owned 40 acres, and Sarah E. Nashold owned the other 40 acres as her separate property. On February 19, 1878, they executed a trust deed conveying said 80 acres to

25—139 ILL.

John G. Penfield as trustee to secure a debt of $1700.00 to George Marsh, represented by five notes of that date executed by both Menzo and Sarah E. Nashold, 4 of $100.00 each payable in 1, 2, 3 and 4 years from July 1, 1878, with interest from date at ten per cent. per annum, and one for $1300.00, payable five years from July 1, 1878, with interest from the latter date at 8 per cent. per annum.

Conant and Menzo Nashold were brothers in law, their wives being sisters and being the daughters of the defendant in error, Esther Riseborough and her husband, Matthew Riseborough. About the last of August, or first of September, 1878, Sarah E. Nashold left her husband and went to her mother's house. She was taken back by her husband to his house, and afterwards removed by her brother-in-law, Conant, to the latter's house. After her separation from her husband she spent much of her time at Conant's, though living sometimes with her mother and sometimes with her brother, Charles Riseborough. The cause of her separation is left in doubt by the testimony, but some of the evidence tends to show that she was not treated well by her husband and was afraid to live with him, while other evidence tends very strongly to prove that she began to show symptoms of insanity when she left him; and, as matter of fact, she was afterwards in 1881 or 1882 declared to be insane and sent to the asylum at Elgin.

On September 20, 1878, Conant went to Penfield and purchased of him the notes and trust deed above described. In December, 1878, he filed a bill against Menzo Nashold and his wife, and the trustee, to restrain the said Menzo from committing waste on the mortgaged property. About the same time also a trespass suit was begun by said Menzo against Conant. It also appears that a suit for damages for an assault was brought against said Menzo by his wife's mother, the defendant in error, based upon a charge that he had pushed or struck his mother-in-law when the latter resisted his efforts to take his wife back to his home.

On January 15, 1879, Conant went to Oregon with Sarah E. Nashold and Joseph W. Hall and David Sheaf. The defendant in error was there to take care of her daughter. Menzo Nashold and his father, Frederick Nashold, were there. Negotiations were entered into for a settlement of some kind between Conant, acting for Mrs. Nashold, on the one side, and Frederick Nashold, acting for his son, on the other side. As a part of this settlement Menzo Nashold and Sarah E., his wife, executed a deed of said 80 acres to Conant, thereby conveying their equity of redemption to the holder of the incumbrance on the land. Upon the execution and delivery of this conveyance, Conant surrendered to Menzo Nashold the notes and trust deed, but no release of the trust deed was executed by the trustee. On the same day, January 15, 1879, a written stipulation was drawn up between Menzo Nashold, Sarah E. Nashold and Esther Riseborough, providing for the settlement and dismissal of all suits to which they were parties, and also reciting that, in consideration of the execution by Menzo Nashold of the deed to Conant, Mrs. Nashold released said Menzo from all claims for alimony or separate maintenance, and that she and her mother gave him a full discharge for all property claims against him, and all property claims that might arise out of the marriage relation between said Menzo and said Sarah. This stipulation was then and there signed by Menzo Nashold, and his wife, and it was seen by Conant, but the latter refused to sign it.

The controversy in this case centers around the deed executed on January 15, 1879, by the mortgagors to the mortgagee. Plaintiff in error claims and testifies that such deed was made to him in payment of his mortgage debt, and in settlement of the suits for waste and trespass pending between himself and Menzo Nashold. On the contrary, defendant in error claims that the deed was made to Conant in order to save the 80 acres for her daughter, and with the understanding and agreement that Conant was to hold the title as security for his debt

and in trust for Mrs. Nashold, and to convey the land back when he should be paid what was due to him. It is contended by the conservator, that, a separation having taken place between Mrs. Nashold and her husband, which resulted in a decree of divorce entered in October, 1880, the property was conveyed to Conant in order that Mrs. Nashold might secure the surplus, which the property should yield over and above the incumbrance, for her support, free from her husband's interference.

The great weight of the evidence is in favor of the contention of the defendant in error. Such is the purport of the testimony of at least eleven witnesses, while substantially the only important proof on the other side is the evidence of the plaintiff in error himself. The equity of redemption was conveyed to him before any part of the debt secured by the trust deed was due. The testimony shows that the property was worth more than the debt for which it was encumbered. Plaintiff in error was Mrs. Nashold's brother-in-law. She was an inmate of his family after he took her to his home from her own husband. If she was not then actually insane, her mind was seriously impaired, and she was easily influenced by one who had constituted himself her guardian. When she signed the deed, he was really her agent, she having no other adviser than her brother-in-law, while he acted under the advice of his own attorney. Forty acres of the land was her separate property. He occupied a double position. He undertook to get the equity of redemption for her, and yet at the same time had it conveyed to himself. While the mortgagee has a right to buy of the mortgagor the equity of redemption, yet a court of equity will look closely into such a transaction to prevent the debtor from being overreached. Conant undoubtedly had the legal right to purchase the notes and trust deed, and having bought them with his own money, there was no resulting trust in Mrs. Nashold's favor as to their ownership. But when he came to the purchase of her property, his relations to her

were such as her agent and protector, that he must be held to his announced purpose of serving her interests and not his own.

Mrs. Riseborough swears that, after they learned of the mortgage, plaintiff in error said: "I will buy up that mortgage, and save the property for her, and I don't want only my money back. I don't want to make anything or lose anything." She further swears, that, before the deed was given, he said "that he would take the deed and save it for her." Hall swears, that, just before the conveyance, plaintiff in error told him, that "he thought it was not safe to have it (the property) in the reach of Mr. Nashold * * * and said it could be deeded over to him, and he would keep it for Lizzie and her boy." Sheaf swears: "It was my understanding that the transfer was to settle some controversy between Menzo Nashold and his wife, that it was to free Nashold from all claim his wife had upon him in view of a divorce," etc. Menzo Nashold swears: "he (Conant) had bought the mortgage, and he claimed I was beating my wife that had left me, taking property that belonged to her. * * * I wanted to give a deed for 40 acres and release my interest in my wife's 40 to her, and they claimed I was to give him a deed of the 80. Mr. Conant, Mr. Hall, Mr. Sheaf and my father, and I think, Mr. Dutcher, were present. * * * When Conant and the others stated that we were to give a deed of 80 acres, I said: "if it is my wife's wish, and all her folks' wish, I will sign a deed of the 80 to Conant. * * * My wife did not refuse to live with me. Conant came and got her." He also says, that he signed the deed, "so that nobody could say that I had beat the woman out of what belonged to her. Mr. Conant was acting for my wife." Penfield swears: "I had some conversation with Conant. * * * I could not remember the language, but it gave me the impression he wanted it (the trust deed) for the benefit of Mrs. Nashold who was having trouble with her husband. * * * I think he told me that Mr. Nashold was abusing his wife, and I think the impression

was given me that he was trying to get the property that she received from her father's estate."

Although Sheaf testifies as a witness for plaintiff in error, and to some extent sustains his claim, yet his evidence in the main confirms the statements of the witnesses for defendant in error, and, when asked "who seemed to be acting for Mrs. Nashold" in the settlement, he replies: "Well, I should say Mr. Conant was." The plaintiff in error himself admits, that he consulted Mrs. Nashold beforehand, and made no proposition of settlement without seeing her.

The right to redeem land conveyed by an absolute deed cannot .be established by simply proving that such was the understanding on which the deed was executed, but parol evidence may be received to show the existence of a debt on account of which the conveyance was made, and such a fact will, in a court of equity, control the operation of the deed. Such parol evidence is admissible so far as it conduces to show the relations between the parties, or to show any other fact or circumstance of a nature to control the deed, and to establish such an equity as would give a right of redemption. (*Sutphen* v. *Cushman,* 35 Ill. 186; *Knowles* v. *Knowles,* 86 id. 1.)

In the present case, the existence of a debt of $1700.00 was clearly proven. The notes and trust deed securing that debt were cancelled and surrendered, and a deed, absolute in form, was substituted as security for the debt. It is true, that one of the debtors, Menzo Nashold, was released from the payment of the debt by the surrender to him of the notes and trust deed, and as to him the deed was a payment, but his wife, the other debtor, who had signed the notes and trust deed with him and was liable for the whole debt, still remained liable therefor, and retained the right of redemption by reason of the deed made in her interest and for her benefit.

Besides being a security for the debt, the deed was also, as to the value of the property over and above the debt, a conveyance in trust to an agent of one of the grantors therein. As

to such excess in value, there was no purchase of the property by the agent with ·his own funds.    But one of the grantors, from whom the agent received the title was already interested in the property in her own right, and by the relinquishment to her by her husband of his right therein.    One who professes to act for another, and yet purchases, or takes title, for himself, will be held to be a trustee, if the party for whom he pretends to buy, or take the title, has an interest in the property. (*Rogers* v. *Simmons,* 55 Ill. 76 ; 1 Perry on Trusts, sec. 215.)

The principles applicable to the facts of this case are well settled by the authorities.    "If confidence is reposed, it must be faithfully acted upon and preserved from any intermixture of imposition.    If influence is acquired, it must be kept free from the taint of selfish interest and cunning and overreaching bargains."    (1 Story's Eq. Jur. sec. 308.)    Where a person is entrusted as a confidential agent with the conduct of business where he professes not to act for himself, but for others who have placed their confidence in him, he is disabled in equity, even though he may be a volunteer, from dealing in the matter of his agency on his own account.    "The agency being established, he will be compelled to transfer the benefit of his contract, although he may swear he purchased on his own account."    (*Dennis* v. *McCagg,* 32 Ill. 429.)    The rule applies not only to persons standing in a direct fiduciary relation towards others, but also to those who occupy any position out of which a similar duty ought, in equity and good morals, to arise.    No party can be permitted to purchase an interest when he has a duty to perform which is inconsistent with the character of a purchaser.    (*Davis* v. *Hamlin,* 108 Ill. 39 ; *Vallette* v. *Tedens,* 122 id. 607.)

In stating the account, it was proper to charge interest at the rates specified in the notes up to the date of the execution, of the deed on January 15, 1879, and, after that date, to charge. interest at the rate of six per cent per annum, the notes having been then surrendered and cancelled.    Not only in view

of the destruction of the notes providing for a greater rate of interest than six per cent, but also in view of the attempt of the plaintiff in error to retain the property for himself, it would be inequitable to allow him more than the legal rate. (*Bond* v. *Lockwood,* 33 Ill. 212.)

We think that the decree of the court below is based upon correct principles, and does justice between the parties. It is accordingly affirmed.

*Decree affirmed.*