Allan S. Bowen, Appellee, v. Eugene Kraemer et al., Appellants.

Gen. No. 34,379.

456 

 Heard in the third division of this court for the first district at the June term, 1930. Opinion filed March 11, 1931. Rehearing denied March 25, 1931.

WILLIAM SLACK, for appellants.

TOLMAN, SEXTON & CHANDLER and JOHN T. FITZGERALD, for appellee.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Complainant Allan S. Bowen filed his bill of complaint charging that Eugene Kraemer and Mary Kraemer, his wife, on March 21, 1918, were seized in fee simple of the West Half of Lot 5 and the East 38 feet of Lot 6, in Kimbark's Addition to Hyde Park, Cook county, Illinois, known as 1353–57 East 53rd Street, Chicago, improved with a two-story frame residence and a three-story brick and stone apartment building; charges further that said Kraemer and wife conveyed said property on March 21, 1918, to complainant for $1,200 over and above the incumbrances on the property aggregating $11,000 by a quitclaim deed recorded March 23, 1918; charges that at the time said conveyance was made complainant gave back to defendants an option in writing to purchase back said property within one year from February 1, 1918, for $1,200 with interest at 6 per cent, subject to incumbrances and to certain other charges specified in said

option; charges further that complainant took possession of said property and has been in possession at all times since the giving of the conveyance; charges further that on November 12, 1918, defendants conveyed said property to John C. Wilson, as trustee, and that this deed was recorded November 22, 1918, and that said John C. Wilson conveyed to Rebecca Rosenheim by deed dated February 10, 1919; charges that said defendant Kraemer and his wife still assert title to said property, on the ground that said deed was, in fact, a mortgage, under which they would be entitled to make redemption; charges that such is not the fact and asks that the deeds now of record to John C. Wilson and Rebecca Rosenheim and the claims of the defendants be declared a cloud upon the title.

Defendants filed their joint and several answer November 25, 1922, admitting that Kraemer and his wife delivered a quitclaim deed to complainants, but deny that the option was signed as alleged and deny that any consideration was paid by Bowen and that the deed was intended as a mortgage. Defendants Kraemer and wife admit executing a deed to Wilson and admit the deed by Wilson to Rosenheim; they also admit that there was a deed signed by Rosenheim to Alice Marie Wagner, who appears as defendant. To this answer a replication was filed and, on March 21, 1923, cross complainants filed their cross-bill charging that the deed was, in fact, a mortgage and that the deed which was executed to Bowen was executed and delivered to Bowen for the use of Hoff, the owner and holder of the second mortgage on the property; charges that the conveyance was given as a mortgage for the purpose of providing additional security for Hoff, by reason of other advances for taxes, liens, insurance, repairs and other necessary expenditures that should be made by Hoff while in possession of the premises; charges further that Hoff agreed to account

to Kraemer and his wife for all rents; that Hoff entered into possession and has always remained in possession and is collecting large sums of money as rent, for which he should account; prays that Hoff may be decreed to surrender possession of the premises and to account to cross complainant.

The answer of Bowen and Hoff to the cross-bill filed herein denies that the deed was a mortgage but admits that Bowen took title as trustee for Hoff on March 21, 1918, and that Hoff became the equitable owner subject to the right of Kraemers to purchase within one year from February 1, 1918.

John C. Wilson and Rebecca Rosenheim appear to have no further interest in the proceeding and the interest of Alice Marie Wagner, if any, arises by reason of a quitclaim deed from Rebecca Rosenheim, who, in turn, took from John C. Wilson, trustee. Alice Marie Wagner did not appear nor testify at the proceeding before the master. There is nothing in the record showing why Kraemer executed his deed to John C. Wilson and afterwards caused John C. Wilson to convey to Rebecca Rosenheim and caused Rebecca Rosenheim to convey to Alice Marie Wagner. No consideration appears to have been paid for said transfers and one of the points urged is that it was done for the purpose of clouding complainant's title.

From the facts it appears that on and prior to March 21, 1918, Kraemer and his wife were seized in fee simple of said premises, together with the improvements consisting of a two-story frame dwelling and a three-story stone and brick apartment building; that in the year 1916, Charles W. Hoff, cross defendant, was engaged in the real estate business and undertook the management of the property in question for the defendants. At the time there was a first mortgage on said real estate in the sum of $10,500, in which Mead and Coe were the mortgagees. This mortgage was

becoming due and Mead and Coe were refusing to renew it unless a substantial payment was made on the mortgage. In order to provide for this mortgage, Hoff undertook to make a loan to Kraemer for the sum of $1,000, and took as security a note for $1,000, dated August 11, 1916, due one year after date and secured by a second mortgage. From this time on, until March 21, 1918, Hoff managed the real estate for Kraemer and his wife and applied the income to the making of necessary expenditures and repairs, the payment of the instalments of interest due on the first mortgage up and until February 1, 1918, and taxes. The property had been sold during this period for the 1916 taxes and $517.88 was required to redeem said property from the sale. The holders of the first mortgage were again threatening to foreclose and Kraemer and his wife were without funds to pay all or any part of the first or second mortgage or to redeem from said tax sale. On March 12, 1918, Hoff wrote a letter to Kraemer, in which he set forth in substance that unless some arrangement was made to take care of the taxes and the first mortgage interest, the first mortgagees would foreclose and that Kraemer must take some action to save his property and that the only way out was for Kraemer to give him, Hoff, a deed to the property coupled with the right in Kraemer to redeem within a certain time. No reply was made to this letter, and on March 21, 1918, Kraemer and his wife executed the deed of conveyance to Hoff and took back an option to purchase said property for the sum of $1,200 with accrued interest, and the payment of general and special taxes. The master found that on the date of the execution of the deed in question, there was due from Kraemer and his wife the principal sum of the first mortgage, amounting to $10,500, the principal sum of the second mortgage, amounting to $1,000, and in addition thereto $1,755.55 for interest, tax re-

demption, advancement for repairs of the property and interest on the mortgages.

We are of the opinion from a reading of the testimony that on the date of the giving of this conveyance to the complainant, the property would not have sold for more than enough to pay the outstanding mortgages and obligations. The negotiations resulting in the deed of conveyance by the defendants to Bowen were conducted by a man by the name of Parker, since deceased, who at the time was in the employ of Hoff. Hoff, at this time, was engaged in the real estate business under the name of C. W. Hoff & Co. The cross-bill of the defendants charges that the quitclaim deed was made out to Bowen for the use of Hoff, so that it is safe to assume that the negotiations were conducted entirely for Hoff's benefit. While the negotiations were on between Parker and the defendants, Kraemer telephoned Hoff, according to the testimony of the complainant, and stated that he was rearranging his business and if it were possible he would like to have the opportunity of buying the property back and asked for an option of one year. Complainant testified that he agreed to this and asked Kraemer to have Parker step to the telephone and he then dictated to Parker over the telephone the repurchase agreement which is in evidence. This option to repurchase was signed by Parker as agent for Hoff.

What appears to us to be the principal question involved is whether the parties intended the conveyance of March 21, 1918, to be a deed or a mortgage. Defendants raise several points aside from this main question which we will treat in their order:

First, it is urged that there is no evidence that complainant paid anything for the property nor that he is in possession. The obligation undertaken by Hoff to make repairs, which were not covered by the mortgages, to pay interest on the first mortgage, and to

assume the accruing obligations under the first mortgage, coupled with the fact that a foreclosure proceeding would be expensive and that the property would not be able to pay anything, was a sufficient consideration in conjunction with the right granted to the defendants to repurchase within one year at a fixed price. There was no need to introduce evidence of possession because of the fact that the cross-bill of the defendants charged the complainant with being in possession and this was admitted by the answer to the cross-bill. *Lott v. Davis*, 264 Ill. 272.

Second, it is urged that there is no proof that Allan S. Bowen is in possession. The cross-bill charges that Bowen held for the use of Hoff and that Hoff was the equitable owner and in possession. The answer to the cross-bill admits it.

Third, it is charged that the decree gave affirmative relief to Charles W. Hoff, who is not a party thereto, and that there is a variance between the bill and the decree. Hoff was, however, a party to the cross-bill and his rights were duly adjudicated thereunder. A court of equity will take jurisdiction for all purposes and enter its decree in accordance with the facts found. *Baker v. Salzenstein*, 314 Ill. 226.

It is also insisted under points 9, 10, 11 and 12 that:

(a) An agent cannot purchase the property of his principal for himself;

(b) That the option given to Kraemer was not enforceable because it was signed by Parker, as agent;

(c) That the pleadings of the complainant and the cross defendant are binding upon him; and

(d) That the master heard the witnesses and his finding has the force of a verdict by a jury.

As to (a) counsel cite and rely upon *Conant v. Riseborough*, 139 Ill. 383. In that case it was held that where an agent professes to act for others but in fact acts for himself, his acts inure to the benefit of his

principal. This is not the fact in the case at bar. All the dealings between Hoff and Kraemer appear to have been between them as debtor and creditor. Moreover, at the time the deed was signed, according to the evidence, Kraemer telephoned Hoff in regard to the right to an option to repurchase, so that he knew Hoff was the real purchaser. All the dealings between the parties indicate that they were fully aware of the fact that each was acting in his own interest and behalf.

The position taken by the defendants under (b), that the option was not enforceable, is without weight in view of the fact that the agent signed under the express authority of the principal. The evidence is clear that Parker was authorized to sign for Hoff and under the facts in this case if Hoff had attempted to repudiate the optional contract, it is clear from his conversation over the telephone with Kraemer and his conduct thereafter, that he would be estopped from denying that agency.

Under (c) we are unable to agree with counsel that there were any admissions in the pleadings as to Hoff which would preclude him from asserting his position as owner of the premises.

Under the point (d), to the effect that the finding of the master had the force of a verdict of a jury, the Supreme Court of this State has held that such finding while prima facie correct, is in fact, of an advisory nature only and that the facts are open to consideration by both the trial court and the Appellate Court on review. *Kelly v. Fahrney,* 242 Ill. 240; *Corbly v. Corbly,* 280 Ill. 278; *Chechik v. Koletsky,* 311 Ill. 433.

The controlling element in cases of this kind in this State appears to be the intention of the parties as to whether the instrument is a deed or a mortgage. The court in construing this question is not restricted to any particular kind of evidence, but those matters which tend to present the real intention and under-

standing of the parties and the true transaction may be considered. *Totten v. Totten,* 294 Ill. 70; *Wallace v. Greenman,* 321 Ill. 423.

It may be stated as a general rule that the evidence necessary to convert a deed, absolute on its face, into a mortgage must be clear and convincing. *Kelly v. Lehmann,* 297 Ill. 33; *Council v. Bernard,* 319 Ill. 392. On the other hand it is also a well settled rule that where the transaction is between a mortgagor and a mortgagee and the conveyance is by the mortgagor to the mortgagee, as a result of which the equity of redemption is lost and the entire estate vested in the mortgagee, the transaction will not be sustained in equity unless it is fair and free from oppression, fraud or undue influence. There is nothing that prevents a mortgagor from deeding the property to a mortgagee, providing the agreement is bona fide, fair and equitable, but a court will scrutinize such a transaction with care. *Cassem v. Heustis,* 201 Ill. 208. *West v. Reed,* 55 Ill. 242.

Authorities are cited by counsel for the defendants to the effect that where there is an existing indebtedness between the parties and a deed is given by the debtor to his creditor, there is a presumption that it is intended to cover the indebtedness and become a mortgage and that in such case where the indebtedness is not canceled or extinguished, it is strong evidence that the mortgage is merely an additional security. In the case at bar, however, the existing indebtedness was already evidenced by a mortgage of record. It is also insisted that under the authorities, the retention of the note and mortgage after the giving of the deed in question was strong evidence that the deed was intended as a mortgage for the purpose only of covering additional expenses incurred by the second mortgagor in the protection of his mortgage and that the giving of the deed was an additional security. With these

recognized rules of evidence in mind, together with the presumptions surrounding such a transaction, it becomes necessary to consider the evidence for the purpose of arriving at the intention of the parties. It should also be remembered that the decree of the chancellor should be given certain weight in the consideration of the facts. Defendants; in support of their position that the deed was a mortgage, stress particularly the fact that the note, and mortgage securing it, were not canceled and are still subsisting liens against the property; that the letter of March 12, 1918, written shortly before the signing of the deed of conveyance, and in which Hoff asked the defendants to give him a quitclaim deed, contained a clause to the effect that the defendants would have the right to redeem the property after the giving of the deed; that Hoff after the giving of the deed was in possession and collected the rents and kept account of the collections, together with disbursements and charged the account with commissions for collecting rents and this according to the theory of the defendants, was upon the supposition that he was acting as an agent for the defendant; that nothing was paid to Kraemer at the time of the execution of the deed and that about the 20th of November, 1918, Hoff gave a statement to Kraemer of the receipts and disbursements and that the accounts were carried in Kraemer's name until about the time of the filing of the bill of complaint.

Complainant points out that the property at the time of the giving of the conveyance in question was not of sufficient value to pay under a sale the first mortgage of $10,500, together with the second mortgage of complainant's and the taxes, liens and cost of repairs that had mounted against the property; that a sale under foreclosure in March, 1918, would have resulted in a complete loss of the property and a probable deficiency; that complainant kept the note and mortgage

because in his opinion the option to repurchase had a year to run and in the event of a repurchase it might reattach for whatever it was worth; further that the defendants at no time demanded the note or mortgage or made any effort to obtain it although it was in the office of complainant in the City of Chicago at all times; that the statement was given to Kraemer in November, 1918, at his request, but not because of any right that Kraemer had to such a statement; moreover, that it was the only time from the date of the conveyance until the filing of the bill that Kraemer showed any interest in the property or made any inquiries as to cost or expense of its operation; that Hoff did not take any other or further obligation for moneys advanced by him to clear the property of its liens arising after the giving of the deed; that the consideration of $1,200 fixed in the option to repurchase was a certain fixed sum agreed upon by the parties; that the action of the defendants in waiting over a period of three years and until complainant himself filed his bill, indicates that the defendants considered that they had no further interest in the property and that it would be unfair for them to let the complainant carry the burden until there might be a future enhancement in the value of the property. (*Carr v. Rising,* 62 Ill. 14; *Hancock v. Harper,* 86 Ill. 445); that the account was carried by the complainant on the books of Hoff & Co. and a commission charged for the purpose of keeping the account separate and distinct from other transactions of the complainant; and that the commission was charged for the purpose of prorating the overhead expenses of the business among the various properties for which the complainant under the name of Hoff & Co. was collecting rents; that this was not done for the benefit of the defendants, but for the benefit of the complainant as a proper bookkeeping arrangement; that there was no reason why the defendants or any

of them, if they were of the opinion that they had a right or equity in the property, should not have started proceedings to foreclose, but that it became incumbent upon the complainant to start said suit several years after the date of the conveyance; that the deeds from the defendants to John C. Wilson and by him to the other parties to the suit clearly indicate they were for the purpose solely of clouding the title; that as a matter of fact, from the record, the defendants have no further interest in the property and have parted with their title; that the letter referring to the right to redeem, sent by Hoff to Kraemer prior to the signing of the deed, was improperly admitted in evidence, in view of the rule that prior communications are presumed to have been merged in the final instrument, and was not admissible to vary its terms.

This court is impressed particularly with the fact that from the year 1916, when complainant undertook to advance the money for the defendants for the payment of taxes and a reduction of the first mortgage, the complainant appears to have been more interested in the welfare and protection of the premises and the property than the defendants themselves. From that time on no money appears to have been advanced by the defendants for the protection of the property, but the collection of rents, payment of taxes, upkeep of the premises and the warding off of the foreclosure suit of Mead & Coe appears to have been carried on and conducted almost exclusively by the complainant.

A number of cases are cited by counsel in support of their position that the courts will construe a deed from a mortgagor to a mortgagee as a mortgage most strongly in favor of the mortgagor. Upon examination, these appear to be cases where possession was retained by the grantor, after the giving of the deed, or where improvements were made by the grantor after the conveyance, or there was the creation of a

new debt, or an express provision for redemption, or terms in the deed showing it was intended as security for a loan, or gross disparity between the value of the property and the amount for which it was taken by the grantee, or where the relationship existing between the parties was fiduciary in its character. These elements are lacking in the case at bar and the parties dealt at arm's length.

It appears to us from the facts that the complainant was anxious to preserve the investment already made by him in the property, and that the defendants had lost interest in its conservation. This fact is particularly borne out by reason of the failure of the defendants at any time within the period of over three years to exercise any acts or authority over the property or to evince any intention of claiming their rights as mortgagor.

For the reasons stated in this opinion, the decree of the circuit court is affirmed.

*Decree affirmed.*

HEBEL and FRIEND, JJ., concur.