# The Toledo, Wabash and Western Railway Co.

### v.

# The Jacksonville Depot Building Co.

1. CONTRACT—*rescission for breach—tenancy.* A tenant who erects a building upon the land of another, under contract for mutual occupation and use, may sue for breaches of the contract, but can not seek a rescission of it and a recovery of the cost of the building upon the *quantum meruit* unless there be a covenant of purchase. A reserved right to purchase does not create an obligation to do so.

2. SAME—*practice—misjoinder.* Counts for breaches of a contract and counts for rescinding the contract itself can not be joined in the same declaration, since in the one case the subsisting obligation of the contract is affirmed, while in the other the count, in effect, denies its existence.

APPEAL from the Circuit Court of Morgan county; the Hon. CHARLES D. HODGES, Judge, presiding.

Messrs. HAY, GREENE & LITTLER, for the appellant.

Mr. ISAAC L. MORRISON, for the appellee.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

In October, 1866, the Toledo, Wabash and Western Railway Company and the Jacksonville Depot Building Company made a contract, the material portions of which, so far as concerns our view of this case, were as follows: The railway company, in consideration of $1 and of the covenants entered into by the building company, leased to the latter a portion of its depot ground in the city of Jacksonville for the construction of a passenger depot and eating house, which the building company undertook to erect according to plans furnished by the engineer of the railway company. The last

named company agreed to occupy a certain portion of the building as passenger rooms, baggage rooms and offices, and to pay as rent therefor ten per cent upon the cost of the portion of the building thus occupied. It further agreed to stop all passenger trains 20 minutes for meals, so long as the building company should retain the ownership of the building. The building company covenanted to lease that portion of the building which was to be occupied for the uses ·of an eating house only to such person or persons as should be approved by the superintendent of the railway company. A statement of the cost of the building was to be filed in the office of the railway superintendent, and if, at any time after the expiration of five years from its completion, that company should desire to purchase the building, it was to have the right to do so, by giving six months notice and paying therefor the original cost. The lease to the building company was for five years from the completion of the building, as a fixed term, and was to continue after that period until the railway company should exercise its right of purchase, the option being left wholly to that company.

The building was completed at a total cost of about $28,000. The railway company took possession of its allotted rooms, and the eating house portion was rented, with the consent of the company. The tenants remained two years, but failed to pay the rent. The building company applied to the superintendent of the railway company for his consent to a change of tenants.. He refused to consent to any change, and finally the former company compelled these tenants to leave, and leased to a new tenant without the consent of the superintendent. At the end of about two months, a part of the passenger trains ceased to stop for meals, and soon after all ceased but one. The tenant then left, and the appellee has not since occupied any portion of the building. Notice was given to appellant that it would be held responsible for all damages, and finally this suit was brought. It resulted in a verdict and judgment for $28,650.64 being something more than the

cost of the building.   From this judgment the railway company appealed.

We are very clearly of opinion that the appellant had no right, under a just interpretation of this contract, to compel the appellee to retain a tenant who refused to pay his rent.   It follows that they were in the wrong in ceasing to stop their trains for meals, if the new tenant kept a house to which no reasonable objection could be made, or if they did this without reasonable notice to the appellee, and in such event the appellant could be made to respond in damages. But in this case the action was not brought upon the contract. The declaration contained only the common counts.   The position of plaintiff's counsel is, that, in consequence of the wrongful action of the defendant, the plaintiff had a right to treat the contract as rescinded, and to recover not merely the damages accruing from the loss of rent, but the entire value of the building.   The circuit court so held, and in this we think there was error.

Counsel for appellee relies upon the well established rule that, where work has been done or goods have been sold under a special contract prescribing a particular mode of payment, if the debtor fails to discharge his obligations in the manner required by the contract, the creditor may treat it as rescinded, and recover the value of the labor or goods upon a declaration containing only the common counts.   If a contract has been faithfully executed by one party according to its terms, and the other party has refused to execute, the party not in default has his election to sue upon the contract, or to treat it as rescinded, and recover upon such a contract as the law will imply from the circumstances of the case.   This rule has been, in substance, so often stated that it is needless to cite authorities.

But we can not agree with the counsel for appellee that the rule applies to the case at bar.   The rule requires that the goods shall have been actually furnished to the defendant, or that the labor shall have been actually performed, so as to be

incorporated into his property. His liability arises from the fact that what was the property of the plaintiff, whether in the shape of goods or labor, has become his, and justice requires he should pay for it, either according to the terms of the agreement or independently of it, and upon the basis of actual value. But the difficulty in the present case is, that the labor and materials which went to the construction of this building have not become the property of the defendant, and there never was an agreement that they should become its property. The building was erected on land which, by virtue of the lease, belonged to the plaintiff for the term of five years, and which will continue to belong to it, without limit of time, unless the defendant shall voluntarily decide. to become the owner by paying its cost. The defendant has not even possession. There is nothing here upon which the law can raise an implied contract. To do so, would be to compel the defendant to purchase property which it never undertook to purchase at any price, and which it is under no obligation to purchase. Admitting it has violated its covenants, still we have no right to compel it to buy this property as a penalty. If it had undertaken to do certain things as a payment for the house, by the doing of which the house was to become its property, and had refused to perform its express undertakings, then we might say that, having failed to pay in the manner agreed upon, it should be compelled to pay the real value. But the covenants into which the defendant entered, though undoubtedly the inducement to the plaintiff to build, were, nevertheless, not covenants the performance of which would effect a purchase of the building. Herein lies the distinction between this case and that class of cases upon which plaintiff's counsel relies, and the distinction is radical.

The plaintiff is in the position of a lessee of real estate who has erected on the leased premises valuable improvements, which the landlord has a right to buy, but which he is under no obligation to buy. The landlord, however, has agreed to

do certain things which would make the use of these improvements profitable to the lessee. This agreement has been violated, and the tenant can recover whatever damages he has suffered, but he can not compel the landlord to buy the improvements.

In the case at bar, if the defendant has violated its contract without justification, and made it impossible for the plaintiff to let the house at a reasonable price, the latter can recover from the defendant the rent thus lost, as damages, and this it may do by a series of actions, from year to year, so long as the defendant persists in the alleged wrong. But the action, in its present form, can not be maintained.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*