## Ella J. Derdiger, Appellee, v. Thompson Ross and Company, Appellant.

### Gen. No. 37,168.

Opinion filed December 19, 1934.

PAM & HURD, of Chicago, for appellant; LINCOLN R. CLARK, of Chicago, of counsel.

PEDEN, MELANIPHY, RYAN & ANDREAS, of Chicago, for appellee; JOHN C. MELANIPHY, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

This is an appeal by Thompson Ross & Company, defendant, from a judgment of the circuit court of Cook county in favor of plaintiff and against defendant for $1,000 and costs of suit. The trial was by jury, and the judgment was entered upon a verdict directed by the court on motion of the plaintiff at the

conclusion of plaintiff's evidence. The defendant offered no evidence.

On February 4, 1932, plaintiff filed a declaration in assumpsit, and in a special count charged in substance that on or about April 27, 1928, defendant sold plaintiff a certain note of the Hart Coal Corporation, and as an inducement to such purchase and in consideration therefor, promised and agreed with plaintiff to repurchase the note at any time on request of plaintiff at the same consideration as that paid by her. In addition to this special count, plaintiff filed the common counts. Defendant filed pleas of the general issue, the statute of frauds and an affidavit of merits, denying any such promise to repurchase.

On April 27, 1933, plaintiff, by leave of court, filed an additional count, and it was ordered that the pleas theretofore filed by defendant should stand as pleas to the additional count. This additional count charges in substance that on April 28, 1928, defendant offered to sell plaintiff a mortgage note of the Hart Coal Corporation, and for the purpose and with the intent of inducing plaintiff to purchase such note and pay the purchase price therefor, defendant by its officers and agents represented to the plaintiff that the Hart Coal Corporation was prosperous, and was making large profits; that thereafter plaintiff learned that such representations were untrue, and on April 26, 1933, tendered back to the defendant the note and demanded that defendant repay to plaintiff the sum that plaintiff had paid therefor, but which defendant refused to do. This count also alleges that on April 26, 1933, plaintiff elected to rescind and did rescind the purchase and sale, and that by reason thereof defendant became indebted to her in the sum of $1,026.36.

Plaintiff testified in substance that on or about April 28, 1928, she visited the office of defendant company and conversed with one S. M. Fitch. She does

not state what Mr. Fitch's connection with the defendant company was, except that he had an office there; that she discussed with Mr. Fitch the question of purchasing securities, and that he particularly spoke of the Hart Coal Corporation securities; that Fitch said they were first class securities, and that she would make no mistake in buying them; that Fitch stated that the company was a good earning company, that it earned 10 to 12 per cent; that he took plaintiff to an office and said to her, "I want you to meet one of our vice presidents and sales manager"; that she inquired of this last mentioned person as to the proposed purchase of the Hart Coal Corporation note, and that he told her she had nothing to fear, that "we will stand back of it, and at any time you want your money back, we will purchase the bonds back at their face value of any of the securities." She testified that she then bought the bonds. Plaintiff also testified that in March, 1933, she saw for the first time the following letter addressed by Thompson Ross to one J. W. Pain, which letter was received as evidence, and is as follows:

"Dear Mr. Pain:

"As you have probably known, Thompson Ross & Company over a period covering the last few years has advanced the Hart Coal Corporation on open account cash to a total of approximately three hundred thousand dollars. T. R. & Co. did this for the sole purpose of course of protecting the bondholders' and noteholders' interests. I feel that we have done all and probably more than we should do along that line, and am not at all inclined to advance the company additional funds to take up the notes due next December 1st.

"Sincerely yours,
"Thompson Ross."

On the trial, defendant took the position as it does here, that plaintiff could not maintain an action based on a contract to repurchase the note in question, and at the same time rescind the contract and base her action on a charge of fraud, and insisted that plaintiff should elect which remedy she chose to invoke. It is also insisted that by the filing of the last special count, based on fraud, plaintiff had waived any right to sue on the contract.

In *Brown v. Brown,* 142 Ill. 409, the Supreme Court said:

"A contract into which one party has been induced to enter by the fraud or false representation of the other is not void, but only voidable at the election of the defrauded party. He may, if he chooses, abide by the contract and hold the party guilty of the fraud to its performance. *But he is at liberty to disaffirm and repudiate it, and if he seasonably elects so to do and takes the steps necessary to work a rescission, the contract is no longer binding, and he is remitted to the same position and legal rights which he held before the fraud was perpetrated. But he is not permitted to do both,* and having once made his election, either to affirm the contract or to rescind it, he must abide by such election, and cannot afterward change his position in that respect.

"The authorities all agree that an election to rescind, if made at all, must be made within a reasonable time after the defrauded party has obtained knowledge of the fraud. As was said in *Masson v. Bovet,* 1 Denio, 69: 'A person who is induced to part with his property on a fraudulent contract may, on discovering the fraud, avoid the contract and claim a return of what has been advanced upon it. Fraud destroys the contract *ab initio,* and the fraudulent purchaser has no title. But if the party defrauded would disaffirm the contract, he must do so at the earliest

practicable moment after the discovery of the fraud. That is the time to make his election, and it must be done promptly and unreservedly. He must not hesitate; nor can he be allowed to deal with the subject matter of the contract and afterwards rescind it. The election is with him; but he may affirm or disaffirm the contract, but he cannot do both; and if he concludes to abide by it, as upon the whole advantageous, he shall not afterwards be permitted to question its validity.' '' (Italics ours.)

In *Toledo, W. & W. Ry. Co. v. Jacksonville Depot Bldg. Co.*, 63 Ill. 308, the railway company had made a contract with the depot company, by the terms of which the railway company had leased to the depot company a portion of its grounds in the City of Jacksonville for the construction thereon by the depot company of a depot and eating house. By the terms of this agreement, the railway company agreed to occupy a portion of the building to be built and pay as rent therefor 10 per cent upon the cost of the portion of the building occupied by it, and it was agreed that the remainder of the building to be used as an eating house should be leased by the depot company to persons approved by the railway company. It was also agreed that at the end of a certain period the railway company at its option might purchase the building. The building was completed, the eating house portion rented, and the portion provided for use by the railway company was occupied by it. The tenant of the eating house portion remained two years, but failed to pay rent, and the depot company asked the consent of the railway company to obtain a new tenant, which consent was denied, and the depot company rented the eating house portion of the building to a new tenant, without the consent of the railway company. As a part of the agreement between the parties, it was provided that all passenger trains of the railway com-

pany should stop at the station for meals. After the new lease, made without its consent, the railway company's trains ceased to stop at the station for a sufficient length of time to enable the passengers to obtain meals. The last named tenant left, the depot company ceased the occupancy of any portion of the building, and suit was brought by it, resulting in a verdict and judgment for the depot company, from which an appeal was taken to the Supreme Court. The declaration filed consisted of the common counts, and plaintiff's contention was that because of the wrongful action of the railway company, it had a right to treat the contract as rescinded and recover not merely the damages from loss of rent not paid, as provided by the contract, but the entire value of the building, and the court admitted evidence based on both claims. In its opinion, the court said:

''Counsel for appellee (the depot company) relies upon the well established rule that, where work has been done or goods have been sold under a special contract prescribing a particular mode of payment, if the debtor fails to discharge his obligations in the manner required by the contract, the creditor may treat it as rescinded, and recover the value of the labor or goods upon a declaration containing only the common counts. If a contract has been faithfully executed by one party according to its terms, and the other party has refused to execute, the party not in default has his election to sue upon the contract, or to treat it as rescinded, and recover upon such a contract as the law will imply from the circumstances of the case. This rule has been, in substance, so often stated that it is needless to cite authorities. . . . In the case at bar, if the defendant has violated its contract without justification, and made it impossible for the plaintiff to let the house at a reasonable price, the latter can recover from the defendant the rent thus lost, as

damages, and this it may do by a series of actions, from year to year, so long as the defendant persists in the alleged wrong. But the action, in its present form, cannot be maintained.'' In other words, the holding of the court is that the depot company could recover for rent lost, as damages under the contract, or it might, because of the wrongful act of defendant, treat the contract as rescinded and recover on that ground, but that it could not do both. To the same effect is *Dalson v. Bradberry,* 50 Ill. 82.

In the instant case, plaintiff could, if she had chosen to do so, waive her right to sue under the alleged contract to repurchase and bring her action on the ground of the alleged fraud and deceit, and her action of assumpsit, based on the latter ground, would be proper. However, she could not do both, and we hold that by filing the last count based on fraud and deceit, she waived her right to an action on the contract.

The only proof offered substantiating plaintiff's charge of fraud was the letter from Thompson Ross to Pain, written about a year after the transaction. Where fraud is claimed, the proof must be clear and convincing. *Wolf v. Lawrence,* 276 Ill. 11. We are of the opinion that under the evidence adduced, the court was not justified in directing a verdict for plaintiff. *Payette Fruit Packing Co. v. Oregon Short Line R. Co.,* 180 Ill. App. 253. Therefore, the judgment is reversed and remanded.

*Reversed and remanded.*

HEBEL, P. J., and WILSON, J., concur.